MOBBERLY, APPELLEE, *v.* SEARS, ROEBUCK & CO., APPELLANT.

[Cite as Mobberly v. Sears, Roebuck & Co., 4 Ohio App. 2d 126.]

(No. 3103—Decided November 1, 1965.)

*Mr. Samuel Krugliak* and *Mr. Curt E. Stern*, for appellee.
*Mr. Clyde H. Wright* and *Mr. D. W. Raley*, for appellant.

RUTHERFORD, P. J.  This is an appeal on questions of law from a judgment rendered, upon a jury verdict, in favor of Albert Mobberly, the plaintiff, appellee herein, against Sears, Roebuck & Co., the defendant, appellant herein, in the sum of $150,000.

A "David Bradley" two-wheel portable farm grain elevator manufactured by the Red Cross Manufacturing Corp. and put on the market by Sears as its own product was sold by Sears to Harry Rohrer in July 1955.  Albert Mobberly was injured when it collapsed while being moved on August 8, 1958.

The elevator weighed approximately eight-hundred pounds.  It was mounted on a two-wheel axle with struts extending V shape from the axle to the trough.  There were four struts, two extending from the axle (one on each side) to the rear of the trough, and two others extending from the axle

(one on each side) to the front of the trough. The two to the rear or hopper end were securely fastened to the trough. The two to the front or the discharge end of the trough were connected by a roller shaft on which the trough rested and could roll when being raised or lowered, but they were not fastened to the trough. Hooks were supplied to attach from the roller shaft between the struts to the flange of the elevator trough when transporting the elevator. (Query as to whether plaintiff in the exercise of ordinary care should have used the hooks or whether they would have been effective to prevent the collapse?) The elevator was raised or lowered by a cable running between the rear end front struts and attached to a shaft on which there was a ratchet and crank. The hopper end being much heavier than the open end of the trough, it would rest on the ground and, when the cable was shortened, the struts would draw closer together and raise the open end, vice versa when the cable was lengthened by being unwound, the V between the struts would widen and the open end of the trough would be lowered. There was a hook on the hopper end of the elevator for moving it by tractor, etc.

No notice was given by Sears as to the conditions under which the elevator would collapse.

Nothing broke, there was no defective part or material, and the elevator collapsed in a manner permitted by its design. It collapsed while the plaintiff was moving it from one part of the barn to another; in a highly elevated position, although it could have been lowered by the crank and cables which were a part of its mechanism to a position in which the collapse would not have occurred; while at plaintiff's direction a woman was riding in the elevator trough; while one person had raised and was pushing on the hopper end, and another person was pushing on the left wheel and plaintiff was pushing forward and upward on the right strut running from the wheel to the trough toward the hopper end; and when the trough continued to move forward in its highly elevated position after the wheels which had rolled against a door sill became stationary. It did not collapse until after the rear struts had moved up and forward in an arc to a point beyond where they had become perpendicular to the ground. At this point, and only after reaching this point, could it collapse because the trough was not fastened to

the roller shaft at the top of the front struts. After the rear struts passed through the arc beyond a point perpendicular to the ground it collapsed very suddenly, pinning the plaintiff between the hopper end of the trough and the axle.

Liability in this case cannot be based upon breach of warranty, either express or implied, arising out of contract for there is no privity between the plaintiff, a remote user of the farm elevator, and the defendant, Sears, Roebuck & Company, appellant herein.

However, in Ohio liability need not be dependent upon privity of contract.

Early exceptions to the general rule that there must be privity of contract were: (1) One who negligently produces an article or substance which is inherently dangerous to life or health of mankind and which is intended to preserve, destroy or effect human life is amenable to an action by persons who suffer from such negligence; and (2) one who sells or delivers an article, which he knows to be imminently dangerous to life or limb, without notice of its harmful qualities, is liable to any person who suffers a reasonably-to-be-anticipated injury therefrom, whether there was any contractual relations between the parties or not.

The Supreme Court of Ohio in the case of *Durham* v. *Warner Elevator Mfg. Co.,* 166 Ohio St. 31, at the bottom of page 36, has stated that exceptions to the general rule have been enlarged, citing *MacPherson* v. *Buick Motor Co.,* 217 N. Y. 282, 111 N. E. 1050, L. R. A. 1916 F 696, Ann. Cas. 1916 C 440, and stating that it was held therein that an article need not be inherently dangerous or imminently dangerous to constitute an exception to the general rule; that it is enough if it is such as to make it *reasonably certain that life and limb will be endangered* by its negligent preparation or construction; and, where a manufacturer places a defective wheel on a motor vehicle, *the ordinary and customary use of which* may entail *an undue or unreasonable risk of harm,* a remote user who purchases the motor vehicle from a dealer and is injured from the wheel's defective conditions may successfully maintain an action based on negligence directly against the manufacturer, irrespective of any privity of contract between them. Also, see the case of *Witherspoon* v. *Haft,* 157 Ohio St. 474.

It appears to us that an article need not be inherently dangerous, if it is imminently dangerous, and that the extension has been to permit an action based upon negligence to be brought, in the absence of privity of contract, not only when there is actual knowledge, but also if under the rules set forth the manufacturer has become chargeable with constructive knowledge of such danger.

The manufacturer and seller of farm equipment is not an insurer and he is not under any duty to make an accident-proof or fool-proof piece of equipment. Neither is he liable merely because injuries are sustained by users of such implements, there being no presumption of negligence from the mere fact of injury. The mere fact that danger may possibly result from the character of the equipment sold is insufficient to make the manufacturer liable for injuries; it must appear that injury would probably result. *MacPherson* v. *Buick Motor Co.,* 217 N. Y. 382, paragraph two of the syllabus.

After a review of the cases, it is our finding that, where a manufacturer designs a piece of equipment the nature of which is such as to make it reasonably certain that life and limb will be endangered by its use for a purpose intended if it is negligently designed, the liability of the manufacturer for negligence in design, if danger was to be reasonably expected therefrom, is such that if, after construction and sale, negligence in design is the proximate cause of injury to a blameless user who is lawfully using such equipment, such injured user has a right of action directly against the manufacturer, irrespective of the lack of privity of contract between them.

The manufacturer of a portable farm grain elevator, the nature of which is such as to make it probable that personal injury will result from its use for a purpose intended if it is negligently designed, has a duty to exercise ordinary and reasonable care to design such elevator in a manner that it does not involve an undue or unreasonable risk of injury to a lawful user through the reasonably-foreseeable action of such user while using the equipment for any of its intended uses or, if such a defect does exist of which he has knowledge or by the exercise of ordinary care should have knowledge, to give warning thereof.

The issue of defendant's negligence is dependent first

upon whether the manufacturer performed the duty owed as to design of the elevator. If the manufacturer did perform the duty owed in designing the equipment, no notice was required. If the manufacturer was negligent in designing the equipment and the circumstances were such that there was a duty to give notice, it was undisputed that no notice was given.

The user of the equipment has a duty to use ordinary care as to the manner in which he uses it and for his own safety.

If a company puts out in its own name and as its own product machinery which is manufactured by another, it is subject to the same liability as though it were its manufacturer.

Construing the evidence most strongly in favor of the party against whom a motion for verdict or judgment as a matter of law is made, could reasonable minds reach more than one conclusion upon the following questions: Was the nature of the elevator such as to make it reasonably certain that personal injury would result to a blameless person from its lawful use for a purpose intended, if it was negligently designed? Did the manufacturer use ordinary and reasonable care to design the elevator so that it would not involve undue risk to one using it for an intended purpose? Were the actions of the plaintiff, within the reasonable projection of events, to be anticipated during the operation of moving the portable elevator? Was the plaintiff using ordinary care as to the manner in which he was moving the elevator and for his own safety?

After careful consideration of the record and considering the evidence most strongly in favor of the party against whom the judgment might be awarded, we have reached the conclusion that reasonable minds could come to more than one conclusion upon the issues of (1) negligence of the defendant, (2) negligence of the plaintiff, (3) proximate cause of plaintiff's injuries. It is our finding that jury issues were presented as to each. See *Durham* v. *Warner Elevator Mfg. Co.,* 166 Ohio St. 31, paragraph one of the syllabus.

Jury issues upon which reasonable minds could reach more than one conclusion being presented, the trial court did not commit error in overruling those motions by which the defendant sought to have the court render judgment in defendant's favor. Also, the appellee's cross-assignment of error that the trial

court erred in submitting to the jury the issue of plaintiff's contributory negligence is overruled.

The next assigned error relates to failure of the jury to answer the special verdicts. In accordance with the provisions of Section 2315.15, Revised Code, the defendant timely filed a written request that the court submit in writing each determinative issue to be tried by the jury and direct the jury to render a special verdict in writing.

The determinative issues which the court submitted to the jury in writing, and the answers of the jury were as follows:

"Special Verdict

"Question No. 1: Was the defendant, Sears, Roebuck & Company, negligent in one or more of the particulars alleged in the second amended petition?

"Answer: ('Yes' or 'No') YES Each juror concurring in the above answer signs his or her name this 3 day of April, 1964." (Ten jurors signed.)

"Question No. 2: If the defendant, Sears, Roebuck & Company, was negligent, was such negligence a proximate cause of any injuries which plaintiff sustained?

"Answer: ('Yes' or 'No') YES Each juror concurring in the above answer signs his or her name this 3rd day of April, 1964." (The same ten jurors signed as signed the answer to question No. 1.)

"Question No. 3: Was the plaintiff, Albert Mobberly, negligent?

"Answer: ('Yes' or 'No') ......Each juror concurring in the above answer signs his or her name this....day of April, 1964." (There was no answer and no signatures.)

"Question No. 4: If the plaintiff, Albert Mobberly, was negligent, was such negligence a proximate cause of any injuries he sustained?

"Answer: ('Yes' or 'No')......Each juror concurring in the above answer signs his or her name this .... day of April, 1964." (There was no answer and no signatures.)

"Question No. 5: If from the above answers, the court determines that the plaintiff, Albert Mobberly, is entitled to recover, what amount of money will compensate plaintiff for such injuries and damages as he did sustain?

"Answer: $150,000.00 Each juror concurring in the above answer signs his or her name this 4th day of April, 1964." (Nine of the ten jurors who signed the answers to questions one and two signed this answer.)

While the jury was deliberating it sent to the court a question: "Can you vote that both are negligent?"

The court reread what had been charged on negligence and on contributory negligence but gave the jury no more specific answer.

At 5:30 p. m. the jury returned to the courtroom.

"The Court: [to the foreman] You may be seated, sir. The question is whether or not there is any possibility of the jury concluding the case tonight?

"Foreman: Yes, sir.

"The Court: Do you think there is a possibility of you reaching a conclusion, agreement in this case?

"Foreman: Yes."

The jury returned to the jury room at 5:32 p. m. and returned again to the courtroom at 6:18 p. m. at which time the jury was sent home for the night. They began deliberations again at 9 a. m. and at 9:40 a. m. returned to the courtroom.

"The Court: Members of the jury are you ready to make a report?

"Foreman: Yes."

The verdicts were handed to the court. Questions Nos. 1, 2 and 5 were answered as hereinbefore indicated. There were no answers and no signatures following questions Nos. 3 and 4.

"Mr. Wright: Just a moment please. Now comes the defendant and respectfully applies to the court for a mistrial by reason of the jurors' failure to answer the two interrogatories, numbers 3 and 4, * * *, and in the event this motion is overruled defendant insists upon answers to Interrogatories No. 3 and 4.

"The Court: Overruled. Do I understand the defendant wishes to have the jury polled as to the answers to these three questions?

"Mr. Wright: Not at this time Your Honor. Not until the jury answers Interrogatories 3 and 4.

"Mr. Wright: At this time the defendant re-news the

request that the jury be sent back into retirement for answers to questions 3 and 4 of the special verdict.

"The Court: Overruled.

"The Court: Members of the jury, the court will inquire, in examining the Special Verdict, it is obvious that the jury did not answer Question 3 and Question 4, namely: 'Was the plaintiff negligent?' and No. 4, 'If the plaintiff, Albert Mobberly, was negligent, was such negligence the proximate cause of any injuries he sustained?'

"The court would like to inquire and the foreman may answer, if there is any possibility that those questions might be answered by the jury?

"Foreman: We took a vote and it was * * *

"The Court: We don't want to know how you voted. Do you feel the jury cannot answer those two questions as of now?

"Foreman: I don't know.

"The Court: Is there any possibility that you can by further deliberations?

"Foreman: I don't know.

"The Court: Mr. Johnson says he doesn't think there is any possibility * * * is that what the jury feels, no possibility of answering the two questions? Will counsel step into my chambers?"

(Following return of the court and counsel to the courtroom.)

"Mr. Wright: Now comes the defendant and respectfully objects to receiving the verdict in this case and re-news the motion that the jury be required to answer Questions 3 and 4, if they can * * *

"The Court: For the record the court has checked the statute and the court will enter judgment in this case in favor of the plaintiff for the amount of $150,000."

It is our finding that the failure of the jury to answer the question submitted by the court upon the issue of contributory negligence of the plaintiff, which was one of the determinative issues in the case, and the court's acceptance of such verdict and rendition of judgment for the plaintiff, without an answer by the jury, constituted error prejudicial to the defendant—that the failure of a jury in returning a special verdict to

answer determinative issues constitutes a mistrial and necessitates a new trial. See *Aetna Casualty & Surety Co.* v. *Niemiec, Admx.*, 172 Ohio St. 53; also, *Miller* v. *McCallister*, 169 Ohio St. 487, part (3) of paragraph one, and paragraph three, of the syllabus. Further, see Section 2323.17, Revised Code, which provides:

"* * * Where a verdict is so indefinite, uncertain, or defective that a judgment cannot be rendered thereon, the court shall order a new trial."

In the case of *Aetna Casualty & Surety Co.* v. *Niemiec, Admx.*, 172 Ohio St. 53, the jury, in answer to an interrogatory, answered "Don't know," and the court held that this is not a definite answer to an interrogatory and said that the jury failed to return a verdict as required by law. In the instant case, the jury filled in no answer but was asked if they could answer the questions "as of now" to which the foreman answered, "I don't know"; and the foreman was asked further, "Is there any possibility that you can by further deliberations," to which he answered, "I don't know." The trial judge then tried to put the words into the jurors' mouths that they didn't think there was any possibility, but no such answer was obtained. The defendant, appellant herein, made timely objection to acceptance of the verdict and requested that the jury be sent back to the jury room for further deliberations.

Appellee has cited the case of *Noseda* v. *Delmul*, 123 Ohio St. 647, 76 A. L. R. 133. That case was decided prior to the amendment of the special-verdict statutes effective in 1955. In that case, the jury did not say we "don't know" whether we can make a determination on the issue of agency. However, it became immaterial to have the issue of agency of the driver determined, since the answers otherwise indicated that he was not negligent and there would be no liability in any event.

Section 11460, General Code, as in effect when the case of *Noseda* v. *Delmul*, 123 Ohio St. 647, was decided, provided:

"A special verdict is one by which the jury finds facts only as established by the evidence; * * *"

Section 11460, General Code, was repealed and such provision was enacted in Section 11420-14, General Code, and, following the 1955 amendment of Section 2315.14, Revised Code

(126 Ohio Laws 62), successor to Section 11420-14, General Code, such Section (2315.14, Revised Code) now reads:

"A special verdict is one by which the jury finds separately upon each determinative issue tried by the jury * * *."

Since under the former Section the jury was to find facts only as established by the evidence, it is understandable that if no finding were made, in absence of explanation, the reason might be because no facts were found which the jury could set forth as having been established.

The present statute requires a separate finding upon each of the determinative issues. The amendment seems to leave no alternative other than to place upon the jury the duty of making a finding upon each determinative issue, whatever its determination might be; and when the jury fails to make such a finding it has failed to discharge its duty as required by law.

It is our further finding that, under the circumstances, the court's action was unreasonable and arbitrary and that the court abused its discretion by not returning the jury to the jury room for further deliberations.

The next assigned error is that the court refused to submit special interrogatories requested by the defendant. After all the testimony was in, and plaintiff's counsel had completed the opening portion of their closing argument and the defendant's counsel had completed the greater part of their closing argument, the defendant submitted twenty-two special interrogatories which it requested the court to submit to the jury. The court refused to send them to the jury, and we find no error prejudicial to the defendant. Section 2315.16, Revised Code, which provides for such interrogatories does not fix a time when they must be requested. We, therefore, find it to be within the discretion of the court as to whether they have been timely requested, and, when the request is not made until closing arguments to the jury have been nearly completed, at which time twenty-two interrogatories are submitted, the court does not abuse its discretion in refusing to give them for the reason that they have not been timely requested.

The use of the word "negligently" was improper in the interrogatories, as it was improper as used in the pleadings. If timely requested some of them should have been given, while

the giving of others would have constituted error. In regard to proper interrogatories, see *Miller* v. *McAllister*, 169 Ohio St. 487, wherein the court, in the opinion, noted a distinction between questions which are proper for a special verdict and those which are proper for interrogatories. With reference to interrogatories, also see *Masters* v. *New York Central Rd. Co.*, 147 Ohio St. 293, wherein the court noted the correctness of certain interrogatories. Since the court did not commit error in refusing to give them because they were not timely requested, we do not further rule upon them individually at this time.

The eighth, ninth, tenth, and eleventh assignments of error relate to erroneous admission and rejection of evidence and to arguments of counsel. The extent to which this case at times was out of control of the court is best evidenced by the trial judge's own comment during argument, when he said:

"Just a moment. I don't understand everybody wanting to talk here, and even if the court attempts to quiet you down you keep on talking just as though there is no court on this bench. I don't mind if you don't have any respect for me out of this courtroom, but while here you better show respect, not because it is me, but because of whoever it is sitting on the bench. I am being a little irritated by the conduct of the attorneys when you totally ignore what a judge is trying to say; I am trying to maintain decorum so you don't go off half wild. The court is not trying to bawl out anyone. Certainly I have had many opportunities, I may say, and that includes all of you."

Shortly before the foregoing comments were made by the court, and after Mr. Raley, as counsel for the defendant, had concluded his final argument to the jury, Mr. Krugliak, as counsel for the plaintiff, had commenced his final argument to the jury as follows:

"Mr. Krugliak: May it please the court and counsel for the defense and ladies and gentlemen of the jury: I don't think I have ever been called a liar in an open court, and Mr. Raley intimates that certainly by his argument. Mr. Raley has known me too long to believe that. I know Mr. Raley is not a liar, and I know Mr. Wright is not a liar. When they intimate that to this jury, I don't believe they honestly believe that about me. The only reason I am sure they do it is in their anxiety to

influence this jury in some way on the issues of the case when they have no defense; that would be the only reason they would want to do something like that.

"Ladies and gentlemen of the jury, as an officer of this court I will apologize for the conduct of Mr. Raley in this respect because it is not gentlemanly conduct and not fair to you as a jury in this case to make that type of intimation, because we tried this case as honestly and openly as it was possible or we knew how * * *."

A little later Mr. Krugliak said, "It is not a personal attack, I will apologize for Mr. Raley as an officer of this court; I apologize to you for the unseemly conduct in so attacking Mr. Stern, there is no need, but it is a key to something in this case and that is that they have no defense."

It is our finding that this, together with other similar conduct as appears from the record, was outside the proper scope of final argument and was error which did affect the substantial rights of the defendant and was prejudicial.

Although experienced trial counsel were representing both parties in the trial of this cause, the extent to which the evidence entered the field of irrelevancy becomes apparent from the fact that this negligence case, the facts of which were not too complicated, took three weeks to try, resulting in a bill of exceptions consisting of 1,597 pages and by an appellant's brief of 122 pages and an appellee's brief of 91 pages as filed in this court.

Much of the testimony offered by the plaintiff was so unrelated to the elevator and circumstances here in question that it was irrelevant.

The determination of care required of the defendant in the manufacture and sale of the elevator must be made under circumstances which were known or in the exercise of ordinary reasonable care should have been known to the defendant at the time the elevator was manufactured and sold, and the ordinary care required of the defendant should be determined from the circumstances at the time of the injury.

A variation might arise if the manufacturer and seller should, after sale but prior to the injury, gain knowledge of other and prior collapses of identical elevators under similar

circumstances and fail to exercise ordinary and reasonable care under the circumstances to give warning.

Use of the particular elevator and other identical elevators without injury occurring over an extended period would be evidence to be weighed and considered by the jury upon the issue of care exercised by the manufacturer and seller.

Evidence of later improvements in the manufacture of equipment is not admissible for the avowed purpose of showing that the defendant was negligent on the particular occasion involved. See *Tyson* v. *Long Mfg. Co., Inc.*, 249 N. C. 557, 107 S. E. 2d 170, 78 A. L. R. 2d 588; *Pontifex* v. *Sears, Roebuck & Co., Inc.*, 226 F. 2d 909; and *Stevens* v. *Allis-Chalmers Mfg. Co.*, 151 Kan. 638, 100 P. 2d 723.

Plaintiff's first witness was permitted to testify to assumed-facts before there had been any testimony whatever upon which to base such facts. Examples are to be found on pages 124, 125, 126, 127, and 133 of the record, to cite only a few of the instances. Such witness, an instructor in the Department of Agriculture Engineering at Ohio State University, was permitted to testify to accidents unlike what happened in this case and to occurrences which he said were *as happened in this case*, in answer to a question, "Now what is your experience with whether or not this type of collapse can cause injury?" The test is not whether injury can be caused. The witness was not given any assumed facts on which to base his opinion. There had been no testimony on which to assume facts. He was not a witness to the accident, yet he was permitted to testify to conclusions which he was permitted to state were "as happened in this case."

Later, he was permitted to testify over objection that "the design is unsafe," which infers a greater duty than that imposed upon the defendant by law, yet the court overruled a motion to strike the answer.

A reading of the record will disclose numerous instances of admission over objection of testimony unrelated to the facts of this case and not relevant to a determination of the duty of the defendant as hereinbefore defined.

It is further our finding that the admission of plaintiff's exhibit No. 51 over objection was error. It read, "Caution,

never move this elevator when it is in a raised position." It was first used nearly three years after manufacture and sale of the elevator to Rohrer. To render it admissible in this case would require an inference upon an inference, which is not permitted.

For reasons stated the assigned error that the court committed error prejudicial to the defendant in admitting evidence offered by the plaintiff over objections of the defendant is sustained.

The next assigned error is that the court erred in refusing to admit in evidence admissions and statements against interest contained in a previous pleading of the plaintiff.

While admissions in pleadings may become admissible as admissions made against interest, and while, as stated in the brief, they may have been admissible upon the matter of intervening causation, we cannot rule upon this assigned error in this instance, since, after admission was refused, that which had been offered was not proffered into evidence so as to be properly before us for our consideration.

It is our finding that the court committed error prejudicial to the defendant by giving plaintiff's special requests for instructions before argument numbers 1, 2, 4, 5, 6, 8, 9 and 12, and by refusing to give defendant's special request for instruction number 23. The assigned error as to the giving of plaintiff's special requested instruction number 7 is overruled.

The fourth specification of negligence contained in plaintiff's second amended petition read:

"4. In negligently representing to purchasers and others that the elevator could be safely moved from place to place."

After a review of the evidence in this case, it is our finding that the court committed error prejudicial to the defendant by overruling the defendant's motions to strike this allegation of negligence when made at the close of plaintiff's testimony and again at the close of all the testimony.

The court's general charge included the following instructions:

"If the Sears, Roebuck and Company had knowledge of a hazard or defect making the elevator unsafe in its use, then the Sears, Roebuck and Company had a duty to warn.

"Thereafter, if the Sears, Roebuck and Company learned

in fact that the elevator was dangerous or unsafe, the Sears, Roebuck and Company had the duty to convey effective warning to those who had purchased elevators.

"Sears, Roebuck and Company was under a duty to apprise the purchasing public either by labels or instructions as to the manner in which the elevator may be safely used."

It is our finding that these instructions do not properly qualify the duty of Sears as we have hereinbefore defined that duty and that the error is not corrected by consideration of the instructions as a whole.

Defendant's twenty-first assignment of error is that the court erred in overruling the defendant's motion for a physical examination of the plaintiff prior to trial, and abused its discretion in imposing impossible conditions upon the granting of a physical examination of the plaintiff during trial.

On March 13, 1964, three days before this cause was assigned for trial and four days before trial before the jury commenced, the defendant filed a written motion for an order requiring the plaintiff to submit to a physical examination, together with affidavit as follows:

"Defendant Sears, Roebuck & Company represents that the plaintiff, in his amended petition, is claiming that he sustained severe and disabling injuries, and it is necessary, in order to properly prepare its defense, for defendant to have plaintiff examined by a physician.

"The plaintiff has been residing in Florida and, according to his attorneys, he was not expected to return to Stark County until March 11, 1964. Counsel for plaintiff Curt Stern agreed to have plaintiff appear for a medical examination prior to the trial of this case upon the return of the plaintiff from Florida. Accordingly, arrangements were made with Dr. James W. Parks, 550 East Market Street, Akron, Ohio, to give the plaintiff a physical examination on Friday, March 13, 1964, at 9:00 o'clock a. m.

"In the late afternoon of March 12, 1964, counsel for plaintiff, despite the previous agreement of Mr. Stern, announced that they did not intend to have plaintiff appear for such examination.

"Defendant represents that the interests of justice require

that the defendant be afforded the opportunity to have the plaintiff examined prior to the trial of this cause."

The prayer of plaintiff's second amended petition was for judgment against the defendant in the sum of $314,200.

Plaintiff had previously voluntarily submitted to an examination in 1962 by a Dr. Brown of Fort Wayne, Indiana, in connection with another suit filed by Albert Mobberly against another defendant in an Indiana Federal District Court. Sears, Roebuck & Company was not a party to that case.

Defendant took Dr. Brown's deposition and filed it in the instant case, and plaintiff then refused to submit it in examination in this case as he had previously agreed. Counsel for plaintiff were present when the deposition was taken. The court overruled defendant's motion to require plaintiff to submit to a physical examination. The motion was renewed early during the trial, and the court then ruled:

"The motion for a medical examination is sustained on condition that the plaintiff is examined by Dr. Brown in Canton, Ohio, otherwise the motion is overruled."

The defendant did later introduce into evidence Dr. Brown's deposition based upon his examination in 1962. The plaintiff called Dr. Abelson the plaintiff's attending physician as a witness. He testified that he had examined plaintiff a few days before trial and to the plaintiff's condition at that time. He testified that plaintiff's condition was "more unstable than had been evidenced by our previous examination." He further testified at length as to the prognosis on plaintiff's case being very bad and concerning the advisability of future surgery. With respect to plaintiff's ability to engage in regular full employment, Dr. Abelson said, "I think it will get worse."

In an action for damages for personal injuries the trial court has the power to require the plaintiff to submit to a reasonable physical examination at a proper time and place by competent physicians or surgeons, in order that the extent or nature of the injuries might be ascertained. The trial court's ruling is subject to review on error, but the same will not be disturbed unless an abuse of discretion affirmatively appears. See *S. S. Kresge Co.* v. *Trester*, 123 Ohio St. 383.

It is our finding that where, in a negligence action, the

plaintiff prays for a judgment in the sum of $314,200 alleged to result from personal injuries, and plaintiff's attending physician testifies that he examined plaintiff a few days before the trial, that plaintiff's condition had continued to become more unstable, that the prognosis is very poor, and concerning the advisability of future surgery; it is an abuse of discretion for the court to relegate the defendant to the use of a deposition of an out-of-state doctor who last examined the plaintiff two years previously for purpose of another action brought by the plaintiff against another defendant in a Federal Court in another state, and it is a further abuse of discretion to grant to the defendant, as the only alternative, the right to have plaintiff submit to a physical examination but condition such right upon plaintiff's being examined in Canton, Ohio, only by such out-of-state doctor.

We realize that the perfect trial is seldom realized; however, the law requires that the trial be free of error prejudicial to the complaining party, *i. e.*, that there be no defect in the proceeding which affects the substantial rights of the adverse party. There are other errors which we have not discussed. They are such, as standing alone, we would not have found to be prejudicial to the defendant.

For the reasons herein set forth, it follows that the court did not err in overruling the defendant's motion for judgment notwithstanding the verdict but did err in overruling the defendant's motion for a new trial.

The judgment for plaintiff is reversed, with this cause to be remanded to the Common Pleas Court for a new trial and further proceedings according to law.

*Judgment reversed and cause remanded.*

VAN NOSTRAN and CORRIGAN, JJ., concur.

CORRIGAN, J., of the Eighth Appellate District, sitting by designation in the Fifth Appellate District.