DURST ET AL., APPELLANTS, *v.*
VAN GUNDY ET AL., APPELLEES.

(No. 82AP-35—Decided
October 19, 1982.)

———

*Mr. Leonard S. Sigall* and *Mr. Gordon G. Hobson,* for appellants.

*Messrs. Crabbe, Brown, Jones, Potts & Schmidt* and *Mr. Kenneth E. Harris,* for appellees.

NORRIS, J. Plaintiffs appeal from a judgment granted defendants following a trial by jury in the Court of Common Pleas of Franklin County.

On May 5, 1980, Winfield Durst talked by telephone with his daughter, Tina Van Gundy, concerning a security light which she had earlier asked that he assist her husband, Glen, erect at their residence. Mr. Durst went to the Van Gundy residence and, in the course of climbing the Van Gundys' ladder to take measurements, fell and was injured. Mrs. Durst joined her husband in his suit for damages against their daughter and son-in-law, seeking recovery for loss of consortium.

Mr. Durst testified that, in the course of his telephone conversation with his daughter, he asked her if she had a ladder or wanted him to bring his, and she responded that she had a ladder; that, when he arrived at the Van Gundy residence, Glen had not yet returned from work and Tina went inside to attend her crying child; that he took the extension ladder from the garage and tested it to see if it would go up and down properly and, when it did, he leaned it against the house; that he noted one rung at eye level was bent but was solid when he pulled on it; that he started up the ladder and felt the ground giving on one side and climbed down and repositioned the ladder and then started back up; that when he reached for the third rung from the top it came loose and threw him off balance, causing the ladder to slip sideways and him to fall to the driveway below; that he had not noticed anything wrong with the rung which gave way until after the accident when he noticed that it was bent; that after the accident his daughter said, "* * * she was sorry she neglected to tell

[him] about the ladder"; and that Glen told him after the accident that previous to the accident he had put back a rung which had come out while he was moving the ladder.

Glen Van Gundy testified that the ladder had been given to him by his brother who told him that one of the rungs had a crack in it where it had been broken, and had shown him that rung; that he had not attempted to repair it; that he believed the rung shown him by his brother was the one which gave way when Mr. Durst reached for it; and that he had not told Mr. Durst about the broken rung.

Tina Van Gundy testified that she had asked her father to help install the security light; that she knew one of the ladder's rungs was loose, but did not warn her father of the condition; and that her father had asked her if he should bring his ladder and she responded that she had one.

Plaintiffs raise five assignments of error:

"I. The Trial Court erred in instructing the jury on the law relating to duties owed to a social guest and not instructing the jury on the duties owed a business invitee.

"* * *

"V. The Trial Court erred in not sustaining objections to prejudicial statements made by counsel for Defendants-Appellees during counsel's summation to the jury."

In their first assignment of error, plaintiffs argue that Mr. Durst was not a social guest, but was instead an invitee to whom a higher duty was owed by defendants as possessors of land upon which he had entered at their invitation for the purpose of performing services beneficial to them. The portions of the trial court's instructions to the jury which are pertinent to our resolution of this assignment of error follow:

"In order to find the defendants in this case negligent, you must find that they breached their duty to use ordinary care to avoid injuring the plaintiff; in other words, did the actions of defendants in allowing plaintiff to use their ladder constitute a failure to use the ordinary care that an ordinarily cautious and prudent person would under similar circumstances?

"* * *

"A social guest enters and remains upon the premises subject to existing conditions. He assumes the ordinary risk incident to the condition of the premises. The owner or host has a duty to exercise ordinary care not to cause injury to the guest by any act or activity while the guest is on the premises."

The instructions given by the trial court appear to be based, at least in part, upon the third paragraph of the syllabus to the Supreme Court's opinion in *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308 [46 O.O. 177]:

"A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition."

The opinion of the Supreme Court in *Scheibel,* and its detailing of the duties owed by a host to a social guest, were predicated upon the assumption that a social guest is not on the host's premises for purposes in which the host has a beneficial interest. See the first paragraph of the syllabus in *Scheibel* v. *Lipton, supra.* Here, because Mr. Durst was on defendants' premises for a purpose in which defendants had a beneficial interest, he could not be regarded as a social guest. The Supreme Court's concern in *Scheibel* was with the view then

generally prevailing in this country that a social guest was to be considered a licensee, and with the consequence that if a social guests were to be so classified in Ohio, then he would be entitled to the benefit of only the very meager duties owed by a possessor of land to a licensee. *Scheibel v. Lipton, supra,* at 324-325. Accordingly, the Supreme Court placed social guests in a special classification and declared the duties owing to them to fall somewhere between those owed to licensees and invitees.[1] *Scheibel v. Lipton, supra,* at 328-329.

Because Mr. Durst was invited to come upon defendants' premises for the purpose of performing a specific service for their benefit, he should have been regarded by the trial court as an invitee. The facts of this case are to be distinguished from circumstances where a person enters upon premises as an invited social guest for the purpose of participating in a social occasion, and while on the premises is injured while performing some incidental service — for example, while extending the host the courtesy of assisting in washing dishes following a meal. Regarding Mr. Durst as an invitee, regardless of whether he was a "business" invitee in the sense of one who receives compensation for his services or was a close relative of the possessor of the premises, is in keeping with what appears to be the majority view in this country. See, *e.g., Speece v. Browne* (1964), 229 Cal. App. 2d 487, 40 Cal. Rptr. 384; *Brant v. Matlin* (Fla. App. 1965), 172 So. 2d 902; *Cozine v. Shuff* (Ky. 1964), 378 S.W. 2d 635; *Murdock v. Petersen* (1958), 74 Nev. 363, 332 P. 2d 649; *Schlicht v. Thesing* (1964), 25 Wis. 2d 436, 130 N.W. 2d 763.

It is also consistent with the Supreme Court's holding in *Scheibel v. Lipton, supra,* since, as previously noted, the resolution of the issues presented by that case turned on the plaintiff's purpose in being upon the defendant's premises.

The possessor of premises owes a duty to an invitee to exercise ordinary or reasonable care for his safety and protection, and this includes having the premises in a reasonably safe condition and warning him of latent or concealed defects or perils[2] of which the possessor has or should have knowledge. *Scheibel v. Lipton, supra; Englehardt v. Philipps* (1939), 136 Ohio St. 73 [15 O.O. 581]; *Flury v. Central Publishing House* (1928), 118 Ohio St. 154; *S.S. Kresge Co. v. Fader* (1927), 116 Ohio St. 718.

We also note that, even had the evidence supported a conclusion that Mr. Durst was a social guest, the trial court's instructions omitted any reference to the duty of the possessor of premises to warn his social guest of dangerous conditions. *Scheibel v. Lipton, supra,* paragraph three of the syllabus.

Defendants contend that, even if the trial court did err in its instructions on defendants' duty to Mr. Durst, nevertheless, the error was harmless under the "two-issue rule" since the trial court's instructions on contributory negligence were free of prejudicial error and would support the jury's verdict. We reject that contention for the reasons stated by the Supreme Court in paragraph four of the syllabus to its opinion in *Bush v. Harvey Transfer Co.* (1946), 146 Ohio St. 657 [33 O.O. 154]:

"In an action based on negligence, the issue of contributory negligence does not

---

[1] Whether or not Judge Middleton, in writing for the majority of the Supreme Court, actually succeeded in his announced intention to define as distinct and different the duties of care owed to invitees and social guests, may be the subject of legitimate debate—while the words utilized are different, the practical effect of applying the words may not be to necessarily yield different results.

[2] *I.e.,* defects or perils which the possessor has reason to believe his invitee does not have knowledge of and will not likely discover for himself because they are not obvious or readily discoverable in the exercise of ordinary care.

arise unless the issue of negligence on the part of the defendant is first found adverse to the defendant; and error in the charge of the court on the issue of negligence prejudicial to the plaintiff will invalidate a verdict for the defendant even though there was no error in the charge on the issue of contributory negligence.''

The first assignment of error is sustained.

* * *

In their fifth assignment of error, plaintiffs contend that analogies drawn by defense counsel during his summation were prejudicial to their cause:

"It seems to me that this is what the plaintiffs' lawyer wants you to decide, how he wants you to view this case, and I think the best way I can point this out is giving you some other examples of where this society would be should the plaintiffs' theory in this case be successful: now, I have got a hammer, and the head on the hammer is loose. My neighbor comes over and borrows the hammer. He walks out the door with my hammer, and everytime he walks, he swings the hammer and [it] goes click, click, click where it bounces back and forth on the wooden shaft.

''* * *

''* * * And he uses the hammer, and the head is loose, and the head flies off, goes through the picture window, comes to me and says, Ken, I want you to pay for my picture window because your hammer was broke [sic] when you gave it to me.

"A neighbor comes over and wants to borrow my car. I say, fine, go borrow the car. He drives down the street, and he goes 80 miles an hour, and he runs into another car. He says, Ken, I didn't know your car would go that fast. I want you to pay for the damage that I did to that other car.

''* * *

''* * * A neighbor comes over and says, Ken, have you got any Italian salad dressing? I say, yeah, here. The neighbor comes back five minutes later and says,

hey, look, I got this salad dressing all over my clothes. I want you to pay for my clothes. Why is that? I went to shake up the salad dressing and the lid was loose. It came off and salad dressing poured out all over my clothes. I didn't know the lid was loose. Don't you tighten the lid before you shake the salad dressing? Don't you know that if you go 80 miles an hour in a car, something is going to happen? Don't you know that if the tool has got something wrong with it that you can see something is going to happen? Isn't it foreseeable?

"Well, that's the extent to which plaintiff would have you view these facts. * * *''

Objections to the analogies were lodged by plaintiffs' counsel but overruled by the trial court without comment.

The general rule is that analogies, deductions, and inferences drawn from evidence in the case are a legitimate subject of argument and that considerable latitude is accorded counsel in that regard. *Coffey* v. *Shenk* (1974), 39 Ohio App. 2d 156 [68 O.O.2d 352]. However, the converse of the general rule is that such argumentative devices are improper where they are not supported or warranted by the evidence and that, where their employment is calculated to arouse prejudice or misrepresents the evidence to the extent that there is a substantial likelihood that the jury will be mislead, there is prejudicial error. *Jones* v. *Macedonia-Northfield Banking Co.* (1937), 132 Ohio St. 341 [8 O.O. 108], at 346-349; *Mobberly* v. *Sears, Roebuck & Co.* (1965), 4 Ohio App. 2d 126 [33 O.O.2d 188]; *Hall* v. *Burkert* (1962), 117 Ohio App. 527 [24 O.O.2d 322]. This is especially the case where the trial court allows the argument to stand without instructing the jury to disregard it. *Herman* v. *Teplitz* (1925), 113 Ohio St. 164.

Here, the conclusion is inescapable that the analogies employed seriously misrepresented the evidence. By portraying Mr. Durst as an ungrateful person, the analogies were designed to persuade

76

the jury to decide the case upon facts which were not in evidence. Mr. Durst was not borrowing the ladder from defendants in order to confer a benefit upon himself; he was injured in the course of conferring a benefit upon them. By allowing the argument without clarifying instructions, the trial court magnified the unwarranted impression left with the jury by the analogies.

The fifth assignment of error is sustained.

The judgment of the trial court is reversed and this cause is remanded to the trial court for a new trial.

*Judgment reversed and cause remanded for new trial.*

WHITESIDE, P.J., and REILLY, J., concur.

WHITESIDE, J., concurring. While there is a difference between a social guest and a business invitee, there appears to be little, if any, difference in the nature of the duty owed to a social guest or business invitee. Although phrased slightly differently, the test set forth in *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308 [46 O.O. 177], with respect to social guests is that ordinarily set forth with respect to business invitees. See *S.S. Kresge Co.* v. *Fader* (1927), 116 Ohio St. 718, and *Jackson* v. *Kings Island* (1979), 58 Ohio St. 2d 357 [12 O.O.3d 321].

The difference is not so much in the test to be applied (essentially ordinary care under the circumstances) but, rather, in the amount of care required to constitute ordinary care which varies with the circumstances. See *Di Gildo* v. *Caponi* (1969), 18 Ohio St. 2d 125 [47 O.O.2d 282]. Thus, under some circumstances, a reasonable person may exercise greater care for protection of a business invitee than he would to discharge his duty of care towards a social guest. However, as noted in the opinion in *Scheibel,* one measure is whether there

exists a condition known to the owner which involves an unreasonable risk of harm to the social guest or business invitee. Here there was such a known condition in the ladder.

Accordingly, I concur in the opinion and judgment.