OPINION
{¶ 1} Defendant-appellant, Robert M. Brandy, appeals from the July 1, 2002 judgment entry of the Franklin County Court of Common Pleas finding him guilty of aggravated murder, possession of cocaine, having weapon while under disability, and sentencing appellant to an aggregate term of 24 years to life incarceration. For the reasons that follow, we affirm the judgment of the common pleas court.
 {¶ 2} Appellant's aggravated murder and possession of cocaine charges were tried before a jury. Appellant waived his right to a jury trial on the weapon under disability count of the indictment. The following facts are taken from testimony at trial, where appellant testified in his own defense.
 {¶ 3} On April 28, 2001, Reginald and Nicole Gordon went to Ann Benson's home to purchase marijuana from appellant. Ann is appellant's mother. When the Gordons arrived at Ann's house, Reginald exited his car, entered appellant's car, and sat in the back seat. Keisha Campbell and "London," friends of appellant, were also passengers in appellant's car. Appellant drove off, rode around the corner, parked in an alley, and proceeded to prepare a dime bag of marijuana for Reginald. After the transaction, appellant let Reginald out in the alley. Reginald jogged back to his car and appellant proceeded to drive to the store.
 {¶ 4} While on the way to the store, appellant asked "London" to "weigh up the stuff" that was in a brown paper bag underneath the back of the driver's seat. (Tr. 593.) According to appellant, "London" told him that Reginald took the brown paper bag. Appellant pulled around the corner, drove back to his mother's house, and parked behind the Gordons' car, blocking them in. Appellant testified that he got out of the car, and walked to the passenger side of the Gordons' car to confront Reginald. (Tr. 595.) Appellant told Reginald, "to give me back my stuff, which is my drugs, my crack cocaine and my money." (Tr. 596.) Appellant testified that he had 31 grams of crack cocaine and $2,000 in cash. (Tr. 597.) Reginald told appellant he did not have his drugs and money. Nicole attempted to drive off, but appellant testified that he, "got up on top of the back of the bumper and * * * got to the back of the trunk, and * * * just came down into the sun roof. * * * [and] took the keys out of the ignition." (Tr. 599.)
 {¶ 5} Reginald exited the car and appellant followed. At this point, Ann came out of the house to see what was going on. Appellant told Ann that Reginald stole his money and his drugs. According to Nicole, Ann got into the Gordons' car, pulled out a gun, and began to search the interior of the car and the trunk. Ann then searched Nicole between her legs and inside her shirt. Nicole testified that Ann said:
 {¶ 6} "Nicole, I swear to God in the name of Jesus, I am going to shoot your husband." (Tr. 89.)
 {¶ 7} Outside of the car, appellant continued to demand that Reginald give him back his money and drugs. To prove that he had no drugs, Reginald dropped his pants down to his ankles, and according to appellant, Reginald said, "I told you I ain't got your shit." (Tr. 607.) Appellant continued to insist that Nicole and Reginald enter the house for a further search. Nicole and Reginald refused to comply. Nicole testified that appellant:
 {¶ 8} "* * * walked over to his mom, and that is when he began to snatch the gun from her.
 {¶ 9} "And she said, no, [appellant], she said, I am old; you are young. I will do it. He said, no, I am going to do it. And she said, no, I am going to do it. And that is when he just snatched it out of her hand, and * * * pointed it towards us. [Reginald] was standing right beside me, and we were both standing there, and that is when [Reginald] walked away from me, and that is when he said, [appellant], I told you I don't have anything. I told you I don't have anything. And he pulled his shirt up and held his arms up and just told him, I told you I don't have anything, and pulled his pockets out one more time and said, you searched me, I don't have anything.
 {¶ 10} "And he said, if you think I stole something from you, shoot me. And that is when [appellant] said, do you think I'm playing? I said, no, [appellant], we don't think you are playing. No, [appellant], we don't think you are playing. That is when he said, do you think I am playing? And that is when he shot him. He shot him once.
 {¶ 11} "Reginald grabbed his stomach and said, I can't believe this. He said, I can't believe this M.F. shot me. And that's when he leaned back on the car and he got up and he went to turn and got ready to run, and that is when [appellant] shot him again. [Reginald] continued to try to run, and at that time he is dragging his foot, and [appellant] shot him again until he fell on the ground. (Tr. 98-99.)
 {¶ 12} Appellant gave a different version of events. Appellant testified that Reginald told him, "I am about to fuck you up. And that is when he came at me with his fist balled. And at that time I grabbed the gun from my mom. * * * and I just shot. He was coming towards me." (Tr. 610.) Appellant said after he shot Reginald two more times, he dropped the gun and was in a state of shock. (Tr. 614.) Appellant testified that there was no conversation between him and his mother prior to him grabbing the gun and shooting Reginald. (Tr. 611.) After the shooting, appellant went inside the house and exited out the side door to the alley.
 {¶ 13} Appellant was indicted on July 20, 2001 on one count of aggravated murder with specification, one count of possession of cocaine, and one count of having weapon while under disability. Appellant pleaded not guilty to aggravated murder with specification and possession of cocaine, and waived his right to a jury trial with regard to having weapon while under disability count of the indictment. On June 27, 2002, the jury returned a verdict finding appellant guilty of aggravated murder with specification and possession of cocaine. The trial court found appellant guilty of having weapon while under disability.
 {¶ 14} Appellant was sentenced to 20 years to life for aggravated murder, with an additional three years for the firearm specification, eight months for possession of cocaine, and 12 months for having weapon while under disability. The aggravated murder count ran concurrently with the possession of cocaine count, both to be served consecutively with having weapon while under disability. Appellant was sentenced to an aggregate term of 24 years to life. It is from this entry that appellant appeals, assigning the following as error:
 {¶ 15} "Assignment of Error One
 {¶ 16} "The prosecutor's misconduct denied the Defendant-Appellant due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States, and Article 1, Section 10 of the Ohio Constitution.
 {¶ 17} "Assignment of Error Two
 {¶ 18} "The trial court erred when it entered judgment against the Defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence."
 {¶ 19} In his first assignment of error, appellant argues that the state made several disparaging remarks during its closing argument regarding appellant's defense of voluntary manslaughter, and regarding appellant himself.
 {¶ 20} The standard regarding prosecutorial misconduct is a two-part test. A reviewing court must determine whether the comments were improper and, if so, whether they prejudicially affected defendant's rights. State v. Smith (1984), 14 Ohio St.3d 13, 14. Further, prosecutorial misconduct does not warrant a new trial where the trial court properly instructs the jury and the verdict is clearly justified by the evidence. State v. Maurer (1984), 15 Ohio St.3d 239, citing Golamb v. Layton (1950), 154 Ohio St. 305, paragraph three of the syllabus.
 {¶ 21} Closing arguments are not evidence in a case. Maurer, supra. Thus, personal opinions regarding the credibility of witnesses or the guilt of the accused are irrelevant. Smith, supra. The prosecution must also avoid insinuations and assertions, which could mislead the jury. Id. While deductions and inferences drawn from the evidence are a legitimate source of argument, such argument is improper if it is inclined to arouse prejudice in the jury. See Durst v. Van Gundy (1982),8 Ohio App.3d 72, 75.
 {¶ 22} In State v. Cloud (1960), 112 Ohio App. 208, 217, the Eighth Appellate District wrote:
 {¶ 23} "Arguments of counsel in the trial of a lawsuit are permitted for the sole purpose of aiding the jury in analyzing the evidence and thus assisting it in determining the facts of the case. Arguments made to incite a jury to convict to meet a public demand are inimical to the basic rights of a defendant, since they prevent him for having a fair and impartial trial to which he is entitled under the law. * * *"
 {¶ 24} Appellant contends that the following remarks made by the prosecutor during closing argument were disparaging: (1) "What else can Robert Brandy say to you? What else can he say but, oh, it is voluntary manslaughter * * *." (Tr. 750.); (2) "So why not say to you, you know, it is not this big stuff; it is not this little thing I did." (Tr. 751.); (3) the prosecutor's remark that appellant's claim that the Gordons had time to hide the drugs and money on their person or in their body cavities was "ridiculous." (Tr. 757.); (4) that appellant was "pursuing [Reginald] now, he is hunting him down like a dog." (Tr. 760.); and (5) that appellant was a "drug dealer extraordinaire." (Tr. 762.)
 {¶ 25} At the onset, we note that appellant failed to object to these remarks and thus waived all but plain error. State v. Slagle (1992), 65 Ohio St.3d 597. To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. See State v. Tichon (1995), 102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992), 81 Ohio App.3d 644,647. We find neither plain nor prejudicial error.
 {¶ 26} The first three comments alleged by appellant as disparaging, when read in full context, were an attempt by the prosecutor to convince the jury that appellant's defense of voluntary manslaughter must be rejected. Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. Donnelly v. DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 1873. A closing argument must be viewed in its entirety to determine prejudice. State v. Byrd (1987), 32 Ohio St.3d 79, 82. Viewed in its entirety, the prosecutor's closing argument neither materially prejudiced appellant nor denied him a fair trial.
 {¶ 27} Additionally, comparing appellant's actions in shooting Reginald to that of a dog hunting someone or something down, was merely an attempt by the prosecutor to explain to the jury appellant's actions. The prosecutor described appellant shooting Reginald two times, and as Reginald takes the final shot in his back he is either in the process of falling down on the ground or already down. While the prosecutor's comment may have been a bit harsh, it falls short of being abusive. The prosecutor's statement fell within the latitude afforded counsel in closing argument. See, e.g., State v. Beuke (1988), 38 Ohio St.3d 29,32.
 {¶ 28} Furthermore, the prosecutor's characterization of appellant as a "drug dealer extraordinaire" was based on evidence presented at trial where appellant, himself, admitted to a life of drug dealing. Appellant testified that he mostly sold marijuana, but that if someone wanted to purchase crack cocaine, he knew where or who to get it from. Thus, the prosecutor's comment was a fair characterization and proper interpretation of the evidence adduced at trial. See State v. Lott (1990), 51 Ohio St.3d 160, 166 (holding a prosecutor may not allude to matters not supported by admissible evidence). In this instance, we do not find that in the absence of the above statements, the outcome of appellant's trial would clearly have been otherwise.
 {¶ 29} Finally, appellant alleges that the prosecutor's comment during closing argument that appellant should not escape punishment for aggravated murder by alleging sudden passion or fit of rage was improper and prejudicial. Specifically, the prosecutor stated:
 {¶ 30} "The court will instruct you that words alone are not enough to incite someone into using deadly force. So if [Reginald] called [appellant] every dirty name in the book, that would never be enough to allow someone to escape their punishment for aggravated murder by saying" — (Tr. 764.)
 {¶ 31} Defense counsel objected and the trial court sustained the objection. The trial court later instructed the jury:
 {¶ 32} "The evidence does not include the indictment or opening statements or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence.
 {¶ 33} "* * *
 {¶ 34} "You must not speculate as to why the court sustained an objection to any question or what the answer to that question might have been. * * *" (Tr. 770.)
 {¶ 35} The trial court committed no error correctly sustaining appellant's objections and giving curative instructions. "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." State v. Garner (1995), 74 Ohio St.3d 49,59. Accordingly, it must be presumed that the jury properly disregarded the closing remarks of the prosecution as they related to matters of appellant's defense of voluntary manslaughter. As such, the effect of the prosecutor's objectionable statement did not deprive appellant of a fair trial. For the foregoing reasons, appellant's first assignment of error lacks merit and is not well-taken.
 {¶ 36} In his second assignment of error, appellant challenges the sufficiency and weight of the evidence to support his conviction of aggravated murder and possession of cocaine.
 {¶ 37} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
 {¶ 38} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
 {¶ 39} As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. It was within the province of the jury to make the credibility decisions in this case. See State v. Lakes (1964),120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness").
 {¶ 40} First, appellant argues that the evidence for prior calculation and design for the aggravated murder conviction was insufficient and that his conviction was against the manifest weight of the evidence. We find appellant's argument unpersuasive.
 {¶ 41} R.C. 2903.01 sets forth the offense of aggravated murder. R.C. 2903.01(A) states that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *."
 {¶ 42} In addressing the issue of proof of prior calculation and design, we are guided by the recent holding of State v. Coley (2001),93 Ohio St.3d 253, 263, indicating that:
 {¶ 43} "As to `prior calculation and design,' no `bright line test' exists that `emphatically distinguishes between the presence or absence' of `prior calculation and design.' State v. Taylor (1997),78 Ohio St.3d 15, 20 * * *. Yet ' "prior calculation and design" is a more stringent element than the "deliberate and premeditated malice" * * * required under prior law.' State v. Cotton (1978), 56 Ohio St.2d 8, 10
* * * paragraph one of the syllabus. `Instantaneous deliberation is not sufficient * * *.' Id., paragraph two of the syllabus. ' "[P]rior calculation and design" requires "a scheme designed to implement the calculated decision to kill." State v. D'Ambrosio (1993),67 Ohio St.3d 185, 196 * * * quoting [Cotton, supra at 11]."
 {¶ 44} Further, we note that, "prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." Coley, at 264, citing State v. Palmer (1997), 80 Ohio St.3d 543, 567-568; Taylor, at 20-23.
 {¶ 45} In the case at bar, we believe the record contains sufficient evidence from which the jury could have concluded, beyond a reasonable doubt, that appellant acted with prior calculation and design. The evidence before the trial court suggests that appellant drove back to his mother's house looking for Reginald, expressed hostility towards Reginald, argued with his mother for a period of time over who would shoot Reginald, before deciding to grab the gun from his mother, pointing it at Reginald, and then shooting Reginald three times. These facts are sufficient to prove that appellant had "adopted a plan to kill." See State v. Toth (1977), 52 Ohio St.2d 206, 213. Therefore, the trial court properly denied appellant's Crim.R. 29 motion for acquittal with respect to the aggravated murder charge.
 {¶ 46} Secondly, appellant alleges that there was insufficient evidence linking him to the drugs found at his mother's house, therefore, his conviction for possession of cocaine was against the manifest weight of the evidence. Appellant correctly maintains that his presence in the vicinity of illicit drugs is not enough to prove that element. City of Cincinnati v. McCartney (1971), 30 Ohio App.2d 45, 48; State v. Haynes (1971), 25 Ohio St.2d 264, 270. However, the evidence adduced at trial goes well beyond this. Nicole testified that she and Reginald went to Ann's house specifically to purchase drugs from appellant. Appellant even testified that he constantly dealt drugs from his mother's residence. Evidence was presented that appellant entered the house after the shooting, and that the drugs were found out in the open in the house. This evidence supports the conclusion the drugs were in appellant's constructive possession. State v. Pruitt (1984),18 Ohio App.3d 50. The drugs were within appellant's dominion and control. State v. Bradley (1971), 26 Ohio App.2d 229, 232. Of course, this evidence is circumstantial. However, where a jury is properly instructed as to the standards of reasonable doubt, a special instruction on circumstantial evidence is not necessary. Jenks, paragraph one of the syllabus. The fact that appellant dealt drugs from his mother's house on a constant basis, and that he went into the house after the shooting does not conflict with the legitimate inferences which may be drawn from the condition and location of the drugs found. If believed, there was sufficient evidence adduced to support conviction beyond a reasonable doubt. Therefore, the trial court properly denied appellant's Crim.R. 29 motion for acquittal with respect to the possession of cocaine charge. Accordingly, appellant's second assignment of error lacks merit and is not well-taken.
 {¶ 47} For the foregoing reasons, appellant first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and KLATT, JJ., concur.