The STATE of Ohio, Appellee,

v.

SMIDI, Appellant.

[Cite as *State v. Smidi* (1993), 88 Ohio App.3d 177.]

Court of Appeals of Ohio,
Wood County.

No. 92WD062.

Decided June 4, 1993.

178

*Alan R. Mayberry,* Wood County Prosecuting Attorney, and *Gary D. Bishop,* Assistant Prosecuting Attorney, for appellee.

*David R. Pheils, Jr.,* for appellant.

SHERCK, Judge.

This is an appeal from a judgment of conviction and the subsequent imposition of sentence where, following a trial in the Wood County Court of Common Pleas, a jury returned a verdict of guilty to counts of receiving stolen property and possession of a vehicle with knowledge that the vehicle identification number had been defaced. Because we find that the prosecutor repeatedly committed prejudicial acts of professional misconduct, and because the trial court's curative remedy was inadequate, we reverse and remand.

To paraphrase Charles Dickens, this is the tale of two Toyotas. A 1989 Toyota truck was stolen from Pikeville, Kentucky, in May 1990.[1] The second Toyota truck, a 1986 model, was in a Chillicothe, Ohio salvage yard when it was purchased in July 1991 by appellant Joseph Smidi, a used car dealer from Logan, West Virginia. When appellant purchased the 1986 Toyota, he could not transport the whole truck in the bed of his Ford pickup. Therefore, the 1986 truck was cut into pieces. Appellant left with only the cab of the 1986 Toyota, and announced his intention of returning for the remainder of the vehicle at a later date. He never did pick up the rest of the truck.

What happened next was disputed in the trial court. Appellant claims that, from the cab of the 1986 truck, a person known only as "Kenny" was able to construct a whole truck by using parts that, unbeknown to appellant, were taken from the stolen 1989 truck. According to appellant, he paid Kenny for the repair work by giving him a 1982 Chevrolet Citation which was worth about $2,000. Appellant then added other features to this hybrid truck, including a roll bar, special lights, brush guard and striping.

The state's theory of the case was that appellant came to possess the stolen 1989 truck, added features to disguise the truck, took a vehicle identification plate from the 1986 truck and installed that plate on the stolen truck in order to further disguise the identity of the vehicle.

In December 1991, appellant appeared at the Toledo Auto Auction with several vehicles to sell. Included among the vehicles was the disputed truck. The truck was inspected at the auction lot and a discrepancy was discovered. The vehicle identification number ("VIN") plate that is visible in the cab of the truck appeared to have been tampered with. Further inspection revealed that the

---

1. The fact that the 1989 truck was stolen was established by stipulation. Despite the stipulation, appellee sought to prove at trial that the truck was stolen by presenting the testimony of an insurance agent who could only testify that the prior owner of the truck claimed that it was stolen and that the insurance carrier honored the claim. However, there has been no assertion that the presentation of the testimony constituted a rejection of the stipulation and that the testimony was insufficient to prove that the truck was stolen.

truck that appellant was offering for sale had inconsistent VIN plates. The plate visible from the cab identified the truck as the 1986 truck purchased from the salvage yard. However, a VIN stamped onto the frame of the truck corresponded to the VIN of the stolen 1989 Toyota, as did VIN plates attached to the fire wall and the fenders. Stickers on the doors had been scratched off to partially obliterate the VIN.

As a result of these discoveries, auction officials called in government officials, including Perrysburg Police Detective Sergeant Kenneth Vajen. Upon questioning by Detective Vajen, appellant produced a title to the 1986 truck but was unable to produce any documentation regarding the 1989 truck.

Ultimately, appellant was arrested and indicted for receiving stolen property in violation of R.C. 2913.51. Appellant was also charged with possession of a vehicle with knowledge that the VIN had been defaced in violation of R.C. 4549.62.

Trial commenced on May 5, 1992. Detective Vajen testified that appellant admitted switching the VIN plate that was visible from the cab. However, appellant denied making any such statement, offering his imperfect command of the English language as the cause of the misunderstanding. Appellant claimed to be the innocent dupe of Kenny; he denied knowing that the truck or any parts of the truck were stolen or that the VIN plate had been changed. In support of this defense, appellant described how the stranger Kenny came to him and offered to repair the 1986 truck with parts salvaged from a 1989 truck. When Kenny reappeared with a complete Toyota pickup truck, appellant believed it was a 1986 truck and gave Kenny a 1982 Chevrolet Citation in payment for his work.

Prosecutor Gary Bishop attempted to demonstrate that there was no hybrid truck and that even the cab was part of the stolen 1989 vehicle. In so doing, he cross-examined a defense witness by asking questions which incorporated technical information that was not supported by the evidence. For instance, the prosecutor asked a witness:

"So, then, you would not be familiar with the fact that the under the hood dimensions, the length and the width particular between '84 and '88 model Toyota pickups and the new version in '89, there is a difference in the dimension of about nine millimeters."

The witness denied any such knowledge.

While there had been testimony regarding the incompatibility of parts from the two trucks, by the phrasing of the question, and in particular by the reference to "the fact" of the precise difference between the two models, the prosecutor essentially made himself an unsworn witness who could not be cross-examined. Appellant objected, but the prosecutor explained that he was "just asking." The trial court overruled the objection.

In further attempting to show that the two trucks could not have been combined, the prosecutor asked a defense witness:

"Suppose I were to tell you that the two guys that sold that (1986) truck to (appellant) said it was all caved in on the right hand side where a snow plow hit it?"

There had been no testimony of snow plows from the witness who was at the salvage yard. Appellant again objected. Once more, the court accepted the prosecutor's response that he was "just asking" and allowed the witness to answer. The witness, one of appellant's employees, denied having seen the damaged part of the truck. By this question, which was unsupported by evidence, the prosecutor was essentially testifying to the extent of the damage to the 1986 truck and refuting the proposition that the cab of the 1986 truck formed part of the hybrid truck.

The record includes numerous other examples of the prosecutor's presenting "facts" to the jury in the guise of questioning witnesses. The most egregious took place during the cross-examination of appellant. The prosecutor sought to discredit appellant's testimony that he gave Kenny a certain Chevrolet Citation in exchange for the repair work:

"Q. Can you explain to me, then, why that car comes back as being registered to a person by the name of Emily Davis of Logan, West Virginia?

"Q. Which one?

"Q. The '82 Citation.

"A. It can't be. This is impossible.

"Q. Well, Detective Vajen is prepared to come in and testify that he ran the VIN number and registration on that vehicle and it came back as registered to an Emily Davis.

"A. It can't be.

"Q. He's further prepared to testify that he talked to Emily Davis.

"A. Yeah?

"Q. And that she told him you gave her the car last year some time back when she was about seven months pregnant.

"A. 72?

"Q. No. Seven months pregnant. She was seven months pregnant at the time you gave her the car.

"A. This car?

"Q. Yeah.

"A. Is impossible.

"Q. Well, what was impossible is for her to have the car registered in her name and for you to give it to somebody else and still have title.

"A. No. No way. Can't be."

By this exchange, the prosecutor implied that he possessed evidence to rebut appellant's testimony. The prosecutor, by implication, also attacked appellant's character. As a result of this examination, the trial court did take action. Detective Vajen was questioned outside the presence of the jury. He indicated that while he had once talked with Emily Davis on the telephone, she had only confirmed that she was a friend of appellant. She told Detective Vajen that she drove a Chevrolet, but not a Citation. The detective further stated that unidentified authorities in West Virginia had told him that at some unknown point, Davis had driven a Citation.[2] On the subject of the improper cross-examination of appellant, the trial court ruled: "this is awfully close, if not already past the stage of a mistrial." However, the court did not declare a mistrial, but instead instructed the jury to disregard "any assertion made by the prosecutor in his question to the defendant relative to the Chevy Citation."

The closing argument in this case discloses continuing misconduct. The prosecutor called upon the jury to trust in the efficiency of the United States Customs Service, raised the specter of a "trade war" with Japan, and stated that appellant was a habitual car thief that must have "gotten away with it" on prior occasions. Without any evidentiary support, the prosecutor explained to the jury that "all" the parts on the truck were 1989 parts. He assured the members of the jury that they ran no risk of prosecution if their car contained stolen parts, leaving the impression that only crooks are prosecuted by Gary Bishop. Finally, he attempted to appeal to the pocketbooks of the jurors by making appellant responsible for rising insurance rates. As to this last contention, the court indicated that it would give a cautionary instruction, but none was forthcoming until the general charge was given to the jury. At that time, the court stated that the verdict "must not be influenced by any consideration of sympathy or prejudice."

Following the charge to the jury, appellant renewed his motion for a mistrial. The trial court ultimately denied the motion.

---

2. Somewhat remarkably, the prosecutor sought to recall the detective to relate the conversations with the West Virginia authorities. The prosecutor stated that the testimony should be admissible over a hearsay objection merely because it was offered for impeachment purposes. The trial judge held that the testimony was not to be admitted.

The jury returned a verdict of guilty on two counts. Appellant was sentenced and then filed his timely appeal to this court offering as his sole assignment of error:

"The trial court erred to defendant's prejudice in denying defendant's motion for a mistrial."

# I

Appellant principally argues that the trial in this case was so rife with prosecutorial misconduct that a mistrial was mandatory.

 It is not necessary to examine each alleged instance of misconduct in great detail. Even the prosecutor conceded that some of his actions were improper. However, a brief discussion is warranted. It is improper for an attorney, under the pretext of putting a question to a witness, to put before a jury information that is not supported by the evidence. *State v. Daugherty* (1987), 41 Ohio App.3d 91, 534 N.E.2d 888. It is improper for an attorney to state any matter not supported by admissible evidence. *Id.* at 93, 534 N.E.2d at 890–891. Thus, the trial court erred in overruling appellant's objections to questions that were asked of witnesses that were not supported by evidence.

 In argument, it is improper to appeal to the jury's personal interests. *Durst v. Van Gundy* (1982), 8 Ohio App.3d 72, 8 OBR 103, 455 N.E.2d 1319. It is likewise improper to argue "facts" that are not supported by the evidence, although an attorney may urge the jury to draw reasonable inferences from the facts in evidence. *State v. Daugherty, supra.*

 A new trial is required when the prosecutor has misstated facts, put words into witnesses' mouths, spoke as if from personal knowledge, assumed prejudicial facts not in evidence, bullied witnesses, and conducted himself in a "thoroughly indecorous and improper manner." *Berger v. United States* (1935), 295 U.S. 78, 84, 55 S.Ct. 629, 631, 79 L.Ed. 1314, 1321.

 While an attorney's lack of familiarity with the rules of evidence may affect the question of whether the misconduct was intentional or inadvertent, ignorance of the rules of evidence does not render questioning allowable where it would be otherwise improper.

 Generally, the question of whether to grant a mistrial is addressed to the sound discretion of the trial court. *State v. Daugherty, supra.* Because of this discretionary standard, the record on review in most cases does not demonstrate that level of unconscionable conduct that is necessary for us to find error in failing to declare a mistrial. However, this case is an exception because the trial court expressly found that the misconduct of the prosecutor was close to, if not

beyond, the point of a requiring a mistrial. When we add to this finding the subsequent incidents of prosecutorial misconduct that occurred in the closing argument and those earlier episodes which the trial court mistakenly found to be proper questioning, the balance shifts and we are able to hold that the trial court abused its discretion in failing to grant the motion for a mistrial. Accordingly, appellant's first assignment of error is well taken.

We will now address appellant's argument concerning the remedy. Appellant maintains that he is entitled to a discharge rather than a remand for a possible new trial. Only where the misconduct of the prosecutor is intended to goad the defense into seeking a mistrial does the double jeopardy clause prohibit a new trial. *Oregon v. Kennedy* (1982), 456 U.S. 667, 675–676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416, 424.

In the trial court and again in this court, the prosecutor represented that his misconduct was not intentional. As of this time, there has been no factual determination as to whether the misconduct in this case was intentional or inadvertent. Therefore, we cannot hold as a matter of law that a new trial is prohibited. Furthermore, such a ruling would be premature because there has not yet been any effort to bring appellant to a second trial. Accordingly, we find that no explicit ruling on this subject is necessary.

On consideration whereof, we find that substantial justice was not afforded appellant. Appellant was denied a fair trial. The judgment of the Wood County Court of Common Pleas is reversed and this case is remanded for further proceedings not inconsistent with this decision. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK and ABOOD, JJ., concur.