DECISION AND JUDGMENT ENTRY
This appeal comes to us from a judgment of the Lucas County Court of Common Pleas. There, appellant was convicted of aggravated assault. Because we conclude that the trial court properly denied appellant's motions for mistrial and acquittal and did not err in instructing the jury, we affirm.
On December 14, 1996, Donald Coates went to the home of his neighbor, Janice Khan, in an effort to collect a debt. After he left the home, he was involved in an altercation with Khan's boyfriend, appellant, Harvell Hunter. According to Coates, appellant followed him out of the house with a pocket knife and stabbed him four times. Appellant disputed Coates' claims. Appellant insisted that, when he left Kahn's house after Coates departed, Coates attacked him. Appellant responded by stabbing Coates with a piece of metal from a barbeque grill that he found on the ground.
Appellant was indicted on December 19, 1997 for one count of felonious assault, a second degree felony, in violation of R.C. 2903.11(A)(2); that indictment was assigned case no. CR97-3491. R.C. 2903.11 provides in relevant part:
"(A) No person shall knowingly:
"* * *
 "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * * *"
On March 16, 1998, the day set for trial, appellee secured an additional indictment with appellant's knowledge. It was assigned case number, CR98-1439. That indictment again charged appellant with one count of felonious assault in violation of R.C. 2903.11(A)(2). It, however, contained a second count, in which appellant was charged with aggravated assault, a fourth degree felony, in violation of R.C. 2903.12(A)(1). R.C.2903.12(A)(1) provides:
 "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
"(1) cause serious physical harm to another * * *"
Thus, unlike the original charge, the second count of the later indictment did not require that a deadly weapon be used to commit the assault. Appellee, the state of Ohio, secured the second indictment because "the state would be remiss in its duties in this case if it didn't indict on aggravated assault because this court can't include it as a lesser included." At appellee's request, the trial court entered a nolle prosequi on the first count of the new indictment since that count was duplicative of the sole count in the original indictment. After appellant was arraigned on the second count, the matter proceeded to a jury trial on the charges of felonious assault under R.C. 2903.11(A)(2) and aggravated assault under R.C. 2903.12(A)(1).
According to the testimony of Coates and Janice Kahn, Coates and appellant exchanged words because Coates had blown his car horn to get Kahn's attention instead of coming to the door. Coates admitted on the stand that he had told appellant that sooner or later the two would have it out. Coates left without collecting the money Kahn owed him.
Kahn testified that she saw appellant take a knife out of his pocket before he followed Coates out of the door. Coates confirmed that as he was walking away from the house, he heard the door open and turned around to see appellant coming toward him with a knife in his hand.
The two men then started swinging at each other. Coates admitted that he threw a bottle at appellant. The fight ended up in the street, where Coates slipped and fell. Appellant admitted to stabbing Coates, but with a broken metal piece of barbeque grill he found on the ground, not a knife. Appellant testified that he stopped stabbing Coates when Coates started crying; Coates claimed the fight stopped when others intervened.
Coates drove himself to the hospital where he was treated at the emergency room for four stab wounds, as well as less serious injuries. While in the emergency room, Coates was interviewed by police who testified that Coates was not cooperative during treatment. Coates remained hospitalized for two days.
During the trial, the prosecutor emphasized the victim's version of the events and implied that appellant lied about having a knife. Based on appellant's acknowledgment that he knew police officers, the prosecutor repeatedly asked him whether he was a "snitch."
Appellant's defense focused on portraying the victim, not appellant, as the aggressor. Appellant emphasized the difference in size between the two men and Coates' behavior at the hospital.
The trial court instructed the jury that it was to use three verdict forms to reach its decision. The first, which the court titled "Count I", and referred to the original case, number CR97-3491, was to determine whether appellant was guilty of felonious assault in violation of R.C. 2903.11(A)(2), a second degree felony. The court instructed the jury that if it found that appellee had proved all the elements of felonious assault, the jury was then to consider whether appellant had established "the affirmative defense of sudden passion or fit of rage" as defined in R.C. 2903.12(A)(2). That offense, aggravated assault, was set forth in the second form, which the court titled "Alternative Count I", and also referred to case no. CR97-3491. As the review below shows, by instructing the jury on aggravated assault under R.C. 2903.12(A)(2), the court was charging the jury on a "lesser degree offense." R.C. 2903.12(A)(2) defines that lesser degree offense as:
 "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
"* * *
 "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance * * *."
The trial court then instructed the jury regarding the third verdict form, titled "Count II", which referred to the second indictment, case no. CR-1439. Like the second verdict form, the third form also referred to the offense of aggravated assault. However, it referred to aggravated assault without the use of a deadly weapon, as defined in R.C. 2903.12(A)(1), not R.C.2903.12(A)(2).
The court instructed the jury in pertinent language, as follows:
 "If you find that the state failed to prove beyond a reasonable doubt that the defendant knowingly caused, or attempted to cause serious physical harm to [Coates] by means of a deadly weapon, then you must find the defendant not guilty [of felonious assault].
 "If you find that the State proved beyond a reasonable doubt that the defendant knowingly caused or attempted to cause serious physical harm to [Coates] by means of a deadly weapon, and you find that the defendant failed to prove by the greater weight of the evidence that he acted while he was under the sudden passion or in a sudden fit of rate, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of felonious assault.
The trial court went on to provide definitions of provocation and self-defense to the jury.
 "If you find the defendant not guilty of both felonious assault in Count I and of aggravated assault in the alternative Count I verdict form, then you will consider the verdict in what's been referred to as Count [II], alternative aggravated assault, and then complete that verdict form for either guilty or not guilty." (Emphasis added.)
After deliberations began, the jury submitted a written request for clarification of the instructions from the judge.
 "Is alt[ernate count I] agg[ravated] assault due to serious provocation.
 "Is Count II agg[ravated] assault due to self defense?"
The trial court replied:
 "[R]egarding what we've captioned as alternative Count I, aggravated assault, I'll indicate that that offense is based upon an affirmative defense raised by defendant of sudden passion or in a sudden fit of rage brought on by serious provocation.
 "On the second question, I'll instruct you that the affirmative defense of self-defense also raised by the defendant applies to the offense of felonious assault in Count I or the alternative in Count I of aggravated assault, and it also applies to the aggravated assault in Count [II].
 "So if the defendant has proven by a preponderance of the evidence that he acted in self-defense as that term is defined to you in the instructions, then that proof would be applicable to any or all three * * * of the offenses * * * which you are considering * * *."
The jury then returned a not guilty verdict on Count I, felonious assault, in violation of R.C. 2903.11(A)(2), as well as on "Alternative Count I", aggravated assault, in violation of R.C.2903.12(A)(2). Both of these offenses required the use of a deadly weapon.
The jury found appellant guilty of aggravated assault as defined in R.C. 2903.12(A)(1) and set forth in "Count II." Thus, the jury found that appellant, while under provocation, had caused serious physical harm to another.
On May 15, 1999, the trial court sentenced appellant to five years of community control, including one hundred twenty days in work release.
Appellant now appeals setting forth the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "THE CONFUSION OVER THE CHANGES IN THE INDICTMENT LED TO CONFUSION OF THE JURY INSTRUCTION, AND THUS TO CONFUSION IN THE JURORS PREJUDICIAL TO APPELLANT'S CASE."
"SECOND ASSIGNMENT OF ERROR
 "PROSECUTIONAL [sic] MISCONDUCT DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL."
"THIRD ASSIGNMENT OF ERROR
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING TWO MOTIONS, ONE FOR JUDGMENT OF ACQUITTAL PURSUANT TO CR.R. [sic]; THE OTHER FOR MISTRIAL."
 I.
In his first assignment of error, appellant contends that the jury could not have reached its verdict unless it was completely confused by the court's jury instructions.
Appellant is correct in his observations that the jury instructions were complicated,[1] and the discussions between the trial court and both counsel reveal significant confusion about the procedures to be used to instruct the jury after appellee secured the second indictment. Nonetheless, the trial court's procedures followed precedent. The Supreme Court of Ohio has defined aggravated assault to be an inferior degree, not a lesser included offense, of felonious assault because the elements are the same except for the "additional mitigating element of provocation" contained in the aggravated felonious assault charge.State v. Deem (1988), 40 Ohio St.3d 205, 209. A trial court may instruct a jury on inferior degrees of an indicted offense as well as lesser included offenses. Id.; see R.C. 2945.74 and Crim.R. 31(C). "[I]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury."Id., paragraph four of the syllabus.
In what the trial court termed "Count I", appellant was accused of felonious assault by causing harm to the victim by means of a deadly weapon pursuant to R.C. 2903.11(A)(2). As directed by Deem, the trial court properly gave an additional aggravated assault instruction to the jury after appellant presented sufficient evidence of serious provocation. Those instructions referred to "Alternative Count I" and R.C.2903.12(A)(2).
The trial court then correctly instructed the jury that it should consider the separate aggravated assault charge in Count II, which arose from the second indictment, only if it found appellant not guilty of either felonious assault in Count I or aggravated assault in alternative Count I. Count II described the offense of harming another person, but unlike "Count I", or "Alternate Count I", did not require that a deadly weapon be used to inflict that harm. The trial court's instruction was correct, not because Count II was a lesser degree offense of R.C.2903.11(A)(2), but because it was a separately defined and indicted offense.
In this case, the jury convicted appellant of Count II, deciding that appellant, while under provocation, had harmed the victim but had not used a deadly weapon to do so. During his version of the incident, appellant claimed he never had a knife, but instead picked up a broken piece of barbeque grill to defend himself. While the victim and another witness testified they saw appellant with a knife, the jury apparently believed appellant's testimony that, while provoked by the victim, he picked up the grill piece, which the jury determined was not a deadly weapon.
Furthermore, in our view, any arguable lack of clarity would have been harmless, as appellant was convicted of the least serious form of assault, a fourth degree felony. Our review of the record reveals that the jury's verdict was supported by sufficient evidence. Therefore, we cannot conclude that the jury was confused by the complex instructions.
Accordingly, appellant's first assignment of error is found not well-taken.
 II.
In his second assignment of error, appellant asserts that misconduct by the prosecutor deprived him of a fair trial. Appellant cites several examples of questions and comments appellee made during cross-examination and closing argument.
Misconduct of a prosecutor does not constitute grounds for reversal unless the conduct deprives defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. To determine whether a prosecutor's statements constitute misconduct, four elements are examined: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. See State v. Rice (May 1, 1998), Lucas App. No. L-97-1154, unreported citing State v. Braxton
(1995), 102 Ohio App.3d 28, 41.
The "plain error" doctrine under Crim.R. 52(B) applies if a defendant did not object to the conduct at the time made." Consequently, it must appear that but for the error, the result of the trial clearly would have been otherwise. State v.Underwood (1983), 3 Ohio St.3d 12, syllabus, citing State v.Long (1978), 53 Ohio St.2d 91.
Appellant initially complains that when appellee cross-examined him regarding his testimony that he found a piece of barbeque hinge on the ground, appellee asked, "and it wasn't Saint Patrick's Day, was it; it was December 14, 1996?" Appellant's attorney objected, and the court overruled the objection. However, after commenting that the question was not proper, the trial court allowed the answer only as it identified the date of the incident.
The trial court's resolution of the objection narrowed the scope of the answer. Absent some indicia negating the presumption that a jury follows the instructions given by the trial judge, we must conclude that the jury disregarded any improper purpose suggested by the question and that appellant suffered no prejudice. See State v. Sallie (Nov. 22, 1996), Lucas App. No. L-95-263, unreported, citing State v. Loza (1994),71 Ohio St.3d 61, 75. In light of the other evidence presented, it is clear beyond a reasonable doubt that the jury would have found appellant guilty of aggravated assault even if appellee had not asked the question.
Appellant next challenges the prosecutor's efforts to portray him as a "police informant" or "snitch"; this occurred at the beginning of cross-examination. Appellant acknowledged that he was familiar with "police rules as far as parking", such as when Coates was double-parked in front of a house, and that he had friends on the police force he had known from childhood. Appellant had turned himself in after one of those friends told him that a warrant had been issued for his arrest as a result of the fight with Coates. Appellee then asked whether appellant cooperated with police in certain instances because he was a "snitch". The trial court overruled appellant's objection that the question had already been asked and answered. Appellee continued to repeat similar questions, and appellant continued to deny that he was an informant without further objection.
"It is improper for an attorney, under the pretext of putting a question to a witness, to put before a jury information that is not supported by the evidence." State v. Smidi (1993),88 Ohio App.3d 177, 183, citing State v. Daughterty (1987),41 Ohio App.3d 91. Evid.R. 607 provides that a "questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." Appellee's questions attempting to impeach appellant as a "snitch" violated those rules in both substance and form.[2]
In this matter, appellant's responses to appellee's attempt to portray him as a "snitch", who is deceitful, were anything but prejudicial. Appellant's cogent responses suggested that far from being a "snitch", he was a responsible citizen who always cooperated with police when asked to do so. Had this questioning prejudiced appellant, it would have constituted prejudicial error. See State v. Smidi, supra. However, our review of the improper questioning suggests that the prosecutor's cross-examination did not damage appellant's credibility, but instead bolstered it.
Appellant also complains about remarks made during appellee's closing statement. The test for determining prosecutorial misconduct during closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith
(1984), 14 Ohio St.3d 13, 14.
Appellant asserts that appellee improperly asserted her personal opinion of the credibility of witness Janice Kahn during the following portion of closing argument:
 "But so what you are here to judge are the facts and the credibility.
 "What do you think about Janice. She did not want to be here. * * *
 "This person did not want to come forward. But with the power of subpoena, that lady would never have been here. She said to you, under oath that she considers both [appellant and Coates] friends and she never would have been here without a subpoena.
 "Based on that alone, I ask you to consider credibility of testimony and what she said to you. I just don't think its right to be stabbing another person. And she came in and told the truth." (Emphasis added.)
Appellant did not object to this comment when it was made, so the plain error analysis applies. It is improper for an attorney to go beyond the evidence in closing argument by expressing personal opinion as to the credibility of witnesses. See DR 7-106(C)(4). In this matter, the jury clearly rejected the witness's testimony regarding appellant's possession of a knife when it acquitted appellant of felonious assault with a deadly weapon under R.C. 2903.11(A)(2), as well as aggravated assault with a deadly weapon under R.C. 2903.12(A)(2). Consequently, the prosecutor's isolated remark about the credibility of one witness during closing argument did not prejudicially affect appellant's rights. See Donnelly v.DeChristoforo (1974), 416 U.S. 637, 645.
Appellant also expresses concern that counsel had attempted to explain the elements of the offenses during closing argument before appellant objected. The prosecutor immediately abandoned her efforts to define the offenses once an objection was made. The prosecutor then asked the jury only "to rely upon the instructions of law by the court." The trial court instructed the jury that it was solely its province to instruct them. As a result, we cannot conclude that the results of the trial would have been different had the prosector not made that remark.
Accordingly, appellant's second assignment of error is found not well-taken.
 III.
In his third assignment of error, appellant contends that the trial court should have granted his motions for judgment of acquittal, pursuant to Crim.R. 29, and mistrial.
Because the argument concerning the mistrial deals with the evidence about appellant being an "informant", which we previously disposed of, we will address that argument first. We note that the motion was untimely. It was not until a conference in chambers after closing arguments that appellant's attorney requested a mistrial based upon the prosecutor's alleged improper cross-examination regarding the appellant's status as a "snitch". Since appellant did not object to the cross-examination on the basis that it violated Evid.R. 607 at the time it occurred, the trial court was precluded from halting the examination or taking corrective action. State v. Williams (1977), 51 Ohio St.2d 112,117, 119; see State v. Gillard (1988), 40 Ohio St.3d 226, 231. As was previously determined, the record does not demonstrate any prejudice to appellant by the cross-examination. Consequently, we cannot conclude that the trial court abused its discretion by denying appellant's belated motion for mistrial premised on appellee's cross-examination. State v. Daugherty (1987), 41 Ohio App.3d 91.
Appellant also asserts that his motion for acquittal should have been granted. Appellant argues that because of the "confusion in the charges", each element of the charges could not be proved beyond a reasonable doubt. We have already rejected appellant's claims regarding "confusion."
In determining whether the evidence requires a judgment of acquittal, Crim.R. 29(A) provides:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
Under that rule, a trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. It raises a sufficiency of the evidence issue, which the Supreme Court of Ohio has defined.
 "With respect to sufficiency of the evidence, `sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's law Dictionary (6ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486." State v. Thompkins (1997), 78 Ohio St.3d 380, 386; see State v. Bigelow (Dec. 11, 1998), Lucas App. No. L-97-1330, unreported.
Here, the evidence was uncontroverted that appellant and Coates were involved in a physical confrontation, which resulted in significant injuries to the victim. Appellant admitted stabbing the victim. This was sufficient to establish the mensrea, causation, and harm elements of a felonious assault or aggravated assault offense. The significant elements in controversy were whether appellant had used a deadly weapon to inflict the wounds and whether appellant acted under provocation or in self-defense.
Two witnesses testified that appellant used a knife. The jury apparently rejected that testimony, believing instead appellant's testimony of grabbing a piece of metal grill that was close at hand after the altercation began. Because appellee's strategy was to emphasize that a knife, not a piece of metal, was used to stab Coates, appellee never argued that the metal piece could be considered a deadly weapon. Finally, appellant cannot complain about the sufficiency of evidence where he met his burden of proof, establishing provocation.
Consequently, we conclude that the trial court properly denied appellant's motion for acquittal.
Accordingly, appellant's third assignment of error is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Costs are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J.
 Richard W. Knepper, J.
 Mark L. Pietrykowski, J. JUDGE
CONCUR.
[1] The trial court read the jury instructions from a written set of instructions which were given to the jury for their deliberations. That written set of instructions was not included in the record on appeal.
[2] The 1998 Staff notes to Rule 607(B) illustrate the form of questions which may be used to comply with that rule:
 "[T]he requirement of a good faith basis applies only when the cross-examiner is effectively asserting in the form of a question the truth of a factual statement included within the question. If the cross-examiner is merely inquiring whether something is or is not true, a good faith basis is not required. Thus the question, `Your glasses were being repaired at the time of the accident, weren't they?' requires a good faith basis, while the question, `Were you wearing your glasses at the time of the accident?' does not."