I respectfully dissent from the majority on assignments of error three, five and six. Judge Daniel Gaul should have sustained the objections to Assistant Prosecutor Peter Corrigan's line of questioning on Farmer's alleged cocaine use, and abused his discretion by allowing Corrigan to make inappropriate and prejudicial comments during his closing arguments. Moreover, I would find that failing to enforce the subpoena duces tecum
issued to a witness violated Farmer's constitutional right to compulsory process. The judgment should be reversed and a new trial ordered.
The Ohio Supreme Court, in discussing the role of prosecuting attorneys in State v. Lott (1990), 51 Ohio St.3d 160, 165-166,555 N.E.2d 293, noted:
 * * * [H]e is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. Berger v. United States (1935), 295 U.S. 78, 88.
 * * * Prosecutors must avoid insinuations and assertions calculated to mislead. (Citing State v. Smith (1984), 14 Ohio St.3d 13, 14-15).
It is well settled that the "conduct of a prosecuting attorney cannot be made a ground of error unless the conduct deprived the defendant of a fair trial." State v. Maurer (1984), 15 Ohio St.3d 239,266, 473 N.E.2d 768, 793. We, therefore, first examine whether the prosecutor's questions and remarks were improper and then, if they prejudicially affected substantial rights of a defendant. Lott, supra. A criminal defendant receives a "fair trial" only if it is clear, beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty. Maurer and Smith, supra.
On opening statement, the assistant prosecutor advised the jury that he was relying only upon circumstantial evidence to prove Farmer's guilt. Farmer's credibility was important to both the prosecution and the defense. The assistant prosecutor's cross-examination of Farmer follows:
 Q. I guess my first question has to be, did you have crack cocaine that night?
A. No, sir, I didn't.
Q. You're no stranger to drugs, though; isn't that true?
Oviatt: Objection.
Judge: Overruled.
 A. No, I'm not, I'm not no stranger. I haven't done anything in about ten years.
Q. You haven't done anything in about ten years?
A. As far as getting high.
Q. As far as getting high?
A. Right.
Q. Well, you were convicted —
Oviatt: Objection.
— about ten years ago; isn't that true?
Judge: Overruled.
A. Right soon after my daughter was born, Mercedes, I stopped.
Q. And what were you convicted of?
Oviatt: Objection.
Judge: Overruled.
A. I had a stem in the car. A girl and I was in the car.
Q. You had what in the car?
A. A stem. A stem.
Q. Explain to a jury what a stem is.
 A. A stem is a piece of glass that goes in a pipe, and you drop cocaine in it, or reefer or whatever, and you smoke it.
Q. And you could smoke crack cocaine with that; isn't that true?
A. Yes, crack cocaine or weed.
Q. So you have smoked crack cocaine in the past.
Oviatt: Objection.
Judge: Overruled
 A. Right. Like I say, when my daughter was born, she was born May of `88, May 3rd of `88.
Q. So you're celebrating by smoking crack.
Oviatt: Objection.
A. No, no.
Judge: Overruled.
 A. No, I wasn't celebrating by smoking crack. I just, I just stopped then, I'd say, after she was born. I caught this last case in June, June of `88, and I haven't done anything since.
Q. Okay.
A. I'm going to tell you the truth.
Q. You are?
A. Yes, I am, because I don't have anything to hide.
Q. But you got a lot to lose, don't you?
A. Not really.
Q. Not really?
A. No.
Q. It's no big deal to be convicted of this.
 A. Well, I want my job and I would like my back pay because I'm not, I'm not guilty. I'm innocent.
Q. Your back pay?
A. Right. I was just at the wrong place at the wrong —
 Q. So you have some money riding on this case; is that what you are saying?
A. Well, I have my — yeah, right.
Q. So you have a big incentive to lie, don't you?
A. Not really.
Q. A lot of money's not incentive to lie?
A. No. I wouldn't lie because I still be —
Q. Going to jail is not an incentive to lie?
A. I wouldn't want to go to no jail, no, sir.
Q. Spent some time in jail on your last case, right?
Oviatt: Objection.
Judge: Overruled.
 A. I got two years probation. I paid my restitution. I done right. I reported every month and they let me off early, Miss Robinson.
 Q. Let me see if I understand you correctly. You want this jury to believe today that you normally get up at 2:30 or 3:00 in the morning to go to work?
A. Right.
 Q. Okay, and people drop by often when you're up at 2:30, three in the morning?
A. No, no, no. That's the first time that she done that.
Q. Just when people are partying they stop by to your place.
 A. We, she done it, right. She had done it. No, peoples don't stop by.
Q. Because you've partied with her in the past; isn't that true?
A. Well, yeah, I have partied with her but not like that.
Q. Smoking crack?
A. No, no.
Q. Pot?
 A. No. You can not condemn me because I don't condemn someone what they do. If she smoke or if they smoke, they get high, that's them. I don't have to do it. I have obligations and I have a job to go to and I does this. The kids at Thurgood, they love me, and I take care of my business. I don't miss no days there.
Q. You do crack around the kids at Thurgood?
A. I do not do any crack.
* * *
 Q. * * * You think that the city should employ people who are using crack on the street, buying crack; is that what you think?
A. I'm not using no crack.
Oviatt: Objection.
Judge: Overruled.
A. What bothers me is that I never should have been suspended —
Q. It's no big deal using crack.
A. — until I was found guilty. That's what I'm hurt about.
 Q. It's no big deal using crack when you work with children in the Recreation Department?
A. The childrens love me and know me and they respect me there.
 Q. You don't worry about that because when your daughter was born you were out smoking crack yourself anyways.
A. No, no, I wasn't. I told you I had stopped.
Q. Oh, you stopped?
A. And I have three more kids since then.
On closing argument, the assistant prosecutor stated to the jury:
 Corrigan: Victimless crime? I don't think so. Ask police officers who are shot on the job trying to take care of people on drugs. And it burns me up that this comes from — this is someone who is involved with children in a Recreation Department.
Oviatt: Objection
Judge: Overruled.
 Corrigan: Please do not convict Mr. Farmer because of his prior drug arrests. But think about that when you are evaluating his ability to tell the truth in what he said on the witness stand. * * *
* * *
 Corrigan: Although I do think its significant that the dealer pled guilty to the felony. And it's significant —
Oviatt: Objection.
Judge: Overruled.
* * *
 Corrigan: It all adds up to his possessing that cocaine and it is perfectly reasonable for you to infer that. And if you want to exonerate this gentleman, this defendant, and send him back to his job with those kids in the Recreation Department —
Oviatt: Objection.
Judge: Overruled.
Corrigan: Please go ahead. * * *
* * *
Judge: Thank you very much, Pete.
Under Evid.R. 609, a judge has the discretion to exclude evidence of a prior conviction for impeachment purposes "where the court determines that the probative value outweighs the danger of unfair prejudice or confusion of the issues, or of misleading the jury." State v. Goney (1993), 87 Ohio App.3d 497,501, 622 N.E.2d 688, 691. See, also, State v. Wright (1990),48 Ohio St.3d 5, 548 N.E.2d 923. He is required first to ascertain that the purpose for the introduction of the conviction is admissible. The conviction may be used only to attack credibility; it is inadmissible as evidence of bias and prejudice, character evidence, etc., or if its probative value does not outweigh its unfairly prejudicial effect. The judge also may limit questioning to only the name of the conviction, time and place of conviction and punishment. Wright, supra. In making this determination, a number of factors need to be considered: (1) the nature of the crime; (2) recency of the prior conviction; (3) importance of defendant's testimony; (4) centrality of the credibility issue; and, most importantly for the instant case, (5) similarity between the crime for which there was a prior conviction and the crime charged. Goney, supra. The need to carefully consider the admission of a prior conviction of an accused for impeachment purposes is driven by the possibility of the jury misusing the prior conviction as evidence of propensity or general character. Id.
The Goney court went on to state:
 "A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that `if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity." [Id. at 501, quoting Gordon v. United States
(C.A.D.C. 1967), 383 F.2d 936.]
Accordingly, the state bears the burden of showing that the probative value of the prior conviction outweighs the prejudicial impact. Id. See, also, Evid.R. 609(A)(2). Upon its admission, the judge should immediately inform the jury of the limited purpose for which this evidence is being offered. Id. In Farmer's case this was not done. Indeed, it remains unclear exactly what crime Farmer committed in 1988 except that it was drug related, which could provide a jury with much speculation. The actual facts supporting Farmer's earlier conviction likely were far less prejudicial than the assistant prosecutor's speculation and innuendo. The majority wrongly states that Farmer admitted that he was convicted for drug possession, when in fact his testimony shows only that he possessed drug paraphernalia, and the jury never was told what offense Farmer was convicted of committing. Moreover, the questioning went far beyond proving "the fact of the conviction," as stated in Evid.R. 609(F), and cannot be supported under any reasonable construction of Evid.R. 609.
The purposes for questioning on Farmer's prior conviction also fell outside the bounds of impeachment. The testimony was, therefore, admitted for unlimited purposes, inviting the jury to arrive at any possible conclusion — the most obvious being that Farmer was convicted of smoking crack while his first child was being delivered in the hospital, continued to use illegal drugs, and that he used his job to recruit children into lives of drug abuse. Moreover, the objectionable questioning cannot be supported under any reasonable construction of Evid.R. 609, as it went far beyond proving "the fact of the conviction." Evid.R. 609(F). Thus there must be some other basis for allowing the assistant prosecutor's questions and comments.
Through citations to State v. Amburgey (1987), 33 Ohio St.3d 115,515 N.E.2d 925, and State v. Williams (1981), 1 Ohio App.3d 156,440 N.E.2d 65, the majority suggests without analysis that the evidence of Farmer's prior conviction was submitted through cross-examination by the assistant prosecutor to prove Farmer's character for truthfulness or untruthfulness pursuant to Evid.R. 608(B). However, the majority overlooks the purpose of that rule, which is directed to the witness's character for truthfulness, as compared with the purpose of Evid.R. 609 which uses a prior conviction to impeach general credibility.
If evidence of any prior conviction is now admissible under Evid.R. 608 without reference to Evid.R. 609, the majority has brought forth a new and dangerous precedent. Historically, Evid.R. 608(B) provided that the prosecutor may inquire into specific instances of a witness's conduct in order to attack his character for truthfulness. Evidence and questioning concerning a prior conviction is admissible only if the mandates of Evid.R. 609 were satisfied. A judge must first assess whether a conviction is more probative than prejudicial under Evid.R. 609; if the conviction is found inadmissible, the prosecutor may not thwart that determination by asking questions about the conviction under Evid.R. 608. The prosecutor cannot be allowed to admit, under Evid.R. 608, evidence that would be inadmissible as unduly prejudicial under Evid.R. 609. If such a result were possible, Evid.R. 609 would be pointless.
Regardless of whether the questioning was based on the conviction or other specific acts, the majority cannot justify the questioning under Evid.R. 608 or any other rule. Absent a goodfaith belief that a question has a factual predicate, it is improper:
 `[T]o attempt to communicate by innuendo, through the questioning of witnesses when the questioner has no evidence to support the innuendo.' State v. Gillard
(1988), 40 Ohio St.3d 226, 230, 533 N.E.2d 272 (quoting State v. Williams (1977), 51 Ohio St.2d 112, 119, 364 N.E.2d 1364, 1368).
The prosecutor simply cannot ask questions under Evid.R. 608 unless he can show at least a good faith belief that the question has a factual predicate. Gillard, 40 Ohio St.3d at 231,533 N.E.2d at 278. The assistant prosecutor had absolutely no basis for questioning Farmer in this manner. His conduct was not only beyond the bounds of objective good faith, it resembled the vaudevillian "Have you stopped beating your wife?" routines. The most disheartening fact of this case is that it illustrates what the Ohio Supreme Court and this court refer to as increasing and escalating incidents of misconduct. State v. DePew (1988),38 Ohio St.3d 275, 528 N.E.2d 542, cert. den. 489 U.S. 1042.
Furthermore, questioning under Evid.R. 608 must be "clearly probative of the witness's character for truthfulness." State v.Brooks (1996), 75 Ohio St.3d 148, 151-52, 661 N.E.2d 1030, 1035. The questions were not addressed to Farmer's past incidents of truth-telling; the questions were directed toward an alleged (and baseless) penchant for drug use and corrupting children's morals, which have nothing to do with a character for truthfulness. SeeBrooks, supra (arrest for complicity not clearly probative of truthfulness). Like Judge Gaul, the majority has not addressed, much less analyzed, any of the requirements for admitting evidence under Evid.R. 608 or 609.
The questioning also fails to show bias under Evid.R. 616, as discussed in Brooks, supra. Although the avoidance of a second conviction might be a motive for misrepresentation, the accusations about Farmer's conduct with children show no such motive. Moreover, regardless of the theory one attempts to use, the questioning would be inadmissible under Evid.R. 403 because it was grossly unfair.
For the same reasons, the assistant prosecutor's questioning was inappropriate even if one believes that Farmer put his character in issue by testifying that the children at his job loved him.[1] Even if a court could make this finding, the cross-examination remains inappropriate because it consisted of heinous, baseless allegations. The necessity of a good faith belief for questioning applies at all times. It makes no difference whether the questioner is attempting to impeach the witness's character for truthfulness, to show bias, or to impeach some other aspect of the defendant's character when he has put his character in issue.
I have found no justification, under any rule of evidence, for allowing the assistant prosecutor's questioning. Even if some admissible purpose was found, there are compelling reasons to exclude the questioning under Evid.R. 403. The right to cross-examine witnesses does not include the right "to disregard sound evidentiary rules." Amburgey, 33 Ohio St.3d at 117,515 N.E.2d at 927.
The majority submits that the assistant prosecutor's continued references and questions to Farmer about drug use were only offered as responses to issues first broached by Farmer. A review of the dialogue, supra, with allusions to things not in evidence and known by the prosecutor to be either untrue, misleading, irrelevant, and prejudicial does not support the majority's conclusion that the questions were "a legitimate response to appellant's statements."
The majority first states that Farmer brought the questioning upon himself through defense counsel's questioning of Officer Hamrick, as follows:
 Q. (by Mr. Oviatt) Are you aware, Officer, that Mr. Farmer has been suspended from his employment subsequent to this incident?
MR. CORRIGAN. Objection.
 THE COURT. I'm going to sustain this. This is absolutely irrelevant.
The majority then points to Farmer's attorney's proffer of evidence as establishing that Farmer raised the issue and brought the assistant prosecutor's questions upon himself. The majority's opinion wrongly assumes that the baseless questioning was somehow a proper response to a proffer. Such reasoning distracts attention from the real issue. One cannot "open the door" to prosecutorial misconduct.
However, even if one accepts the majority's reasoning as relevant, Farmer's attorney's action cannot justify the assistant prosecutor's conduct. The proffer was made outside the jury's presence, was again rejected by Judge Gaul, and no further mention of Farmer's suspension was made until raised by the assistant prosecutor. His attorney's single question to Officer Hamrick, objected to and sustained, cannot form the basis for the assistant prosecutor's conduct here. The majority makes inconsistent determinations; finding that Judge Gaul correctly denied defense counsel's attempt to introduce Farmer's employment as an issue, while at the same time allowing the assistant prosecutor to question Farmer on the same, irrelevant issue.
On direct exam, Farmer's only reference to his employment was to establish that he was awake at 3:00 a.m. because he began work at 6:00 a.m. Although he again stated that he worked for the city of Cleveland, no further mention of his suspension was made. Prior to the prosecutor's cross-examination of Farmer, the only mention of Farmer's suspension before the jury was the single question posed to Officer Hamrick, objected to and sustained.
The majority mistakenly claims that Farmer "repeatedly sought to interject this conspiracy theory into the proceedings * * *." This simply is not true. Defense counsel made no further attempt to establish bias when Judge Gaul sustained the State's first objection. Furthermore, the question the jury heard, concerning Farmer's suspension, did not itself suggest the officers' bias or any "conspiracy theory." Further questions were necessary before the purpose was apparent to the jury.
The first references to Farmer's suspension and "conspiracy" defense made before the jury came in the assistant prosecutor's cross-examination, as follows:
Q. Where was the crack found? Could you please show that to —
A. I don't know.
Q. Oh, you don't know?
A. No.
Q. The officer didn't show you where it was.
A. No. They took me and put me in the police car.
Q. Okay.
A. They was showing Mr. Stokes.
 Q. That's right. They arrested you because you said you worked for the city. That's when they arrested you.
* * *
Q. That's all a lie. All those people came in here to lie.
A. It wasn't but two.
Q. Just to get you?
A. It wasn't but two, the two officers.
Q. That's what they are here to do, just to get you?
A. I don't know. I don't know why they said this.
Q. Because you work for the city?
Neither Farmer nor his counsel raised the issue after Judge Gaul rejected it. It was only after the assistant prosecutor's inappropriate questioning that Farmer's counsel addressed the issue on redirect. It is not true that Farmer or his attorney "repeatedly interjected" employment issues. Nor is it true, as the majority states, that "[t]hroughout trial, appellant made it clear that he would be reinstated to his position * * * if acquitted." Farmer's only references to this issue were elicited by the assistant prosecutor on cross-examination, followed by his attorney's redirect, and the assistant prosecutor's further references on re-cross. Furthermore, the most damaging part of the assistant prosecutor's questioning remains his baseless claims that Farmer was corrupting children with drugs. Even if he could properly question Farmer about his interest in receiving back pay, this cannot justify the line of questioning employed.
It was the assistant prosecutor who elicited Farmer's answers about his desire to be reinstated to his job and then repeatedly, despite Farmer's denial, referred to Farmer's alleged continued use of crack cocaine on the job and in front of children knowing it could not be proven. The majority agrees that the assistant prosecutor should not have continued to question appellant on this point but, somehow, justifies the conduct by finding "in light of the testimony of the appellant" Farmer received a fair trial.
The majority concludes without explanation that the assistant prosecutor's questioning was a "legitimate response" to Farmer's testimony that the children at his job loved him. An accused does not waive his right to the protection of the Rules of Evidence when he takes the stand. No good-faith basis for these questions can be propounded, much less shown. Gillard, supra. Despite the fact that nothing in the rules sanctions the attack made on Farmer here, the majority condones it without ever explaining how Farmer opened the door to baseless claims that he was corrupting children while at his job. The prejudice is unmistakable; any politician, advertiser, or Hollywood producer can testify to the power of imagery aimed at protecting the innocence of children. Those who believe that an innocent accused should jump at the chance to testify in his own defense should have second thoughts after reading this transcript.
This is not a simple case of accidental disclosure or an isolated remark, tempered by a prompt admonishment to the jury. The assistant prosecutor deliberately hammered at this irrelevant and unfair line of questioning. The judge tacitly approved the misconduct by overruling repeated objections and allowing the assistant prosecutor to continue unbridled. Any question concerning the relevant events of the crime charged became secondary to the assistant prosecutor's baseless caricature of Farmer. The majority opinion not only condones the denial of Farmer's constitutionally guaranteed right to a fair trial, its ill-considered precedent threatens justice in future cases. The majority essentially holds today that a prosecutor is allowed to harangue witnesses with baseless allegations and make improper remarks with impunity, and that a trial judge has the discretion to ignore the basic tenets of Evid.R. 608 and 609.
In closing argument, the assistant prosecutor stated that Farmer had prior arrests, told the jury that the crack was found in "his" (meaning Farmer's) car, stated that Farmer was in a high drug area" (Farmer was at a gas station five blocks from his home), spoke of police officers shot on the job "trying to take care of people on drugs" and his personal outrage about Farmer having contact with children on his job. Most condemnatory was the assistant prosecutor's question to an arresting officer designed to obtain the information that Loftus pled guilty to "a felony" and the car's driver, Stokes, pled guilty to a misdemeanor. He referred to the "dealer's" plea of guilty as being "significant" knowing full well that Farmer would be bound by inferences drawn by the jury. Not only am I at a loss to explain how reference to a dealer's guilty plea was a response to anything in the defense argument, this court was reversed on that same conclusion in State v. Smith (1984), 14 Ohio St.3d 13,470 N.E.2d 883.
The majority also claims that the assistant prosecutor's remarks, in his rebuttal on closing argument, referring to his loathing of Farmer for killing policemen and corrupting children, were a legitimate response to defense counsel's argument of a "victimless crime." Farmer's attorney made no reference to Farmer's job in his closing argument, no reference to his back pay, and no reference to his contact with children. Toward the end of his rebuttal, the assistant prosecutor improperly focused the jury's attention on an irrelevant, unfair, and highly prejudicial line of rhetoric that certainly was not "interjected" by Farmer or his attorney, but by the assistant prosecutor himself.[2]
Even when admitting that the assistant prosecutor's actions were wrong, the majority inexplicably states that Farmer was not prejudiced. I cannot agree that, without this misconduct, Farmer would have been convicted. The blatant plea to protect children, combined with references to other persons' guilty pleas, the improper credibility attacks, and the failure to specify Farmer's conviction, were substantial parts of the prosecution's case and had significant effects. Moreover, the evidence of Farmer's guilt was not so overwhelming that the assistant prosecutor's misconduct paled by comparison. It was entirely circumstantial. A new trial is required:
 when the prosecutor has misstated facts, put words into witnesses' mouths, spoke as if from personal knowledge, assumed prejudicial facts not in evidence, bullied witnesses, and conducted himself in a `thoroughly indecorous and improper manner.'
State v. Smidi (1993), 88 Ohio App.3d 177 at 183, quoting Bergerv. United States (1935), 295 U.S. 78, 84.
This court, in State v. Mann (1993), 93 Ohio App.3d 301, 312
set out the elements to be considered in determining whether a prosecutor's statements amount to misconduct:
 (1) the nature of the remarks; (2) whether an objection was made by opposing counsel; (3) whether corrective instructions were given; and (4) the strength of the evidence against the defendant. Another factor * * * is whether the remarks prejudicially affected substantial rights of the defendant. State v. Smith (1984) 14 Ohio St.3d 13, 14, 470 N.E.2d 883, 885.
The nature of the assistant prosecutor's questions and remarks were improper and prejudicial; objections were made and overruled; no corrective instructions were given at all; and the evidence was circumstantial and based upon finding a rock of crack cocaine on the floor of the car and Loftus' "furtive" hand movements in the car. The police officers' stories are subject to question; it is unclear whether they could have seen the events in the detail described while passing by the scene in a moving car, and there is some question concerning the "plain view" discovery of a small piece of crack cocaine in the car. If the assistant prosecutor's improper remarks and questions are removed from this transcript, it is not clear "beyond a reasonable doubt" that a jury would have found Farmer guilty. Smith, supra, andState v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. The majority apparently has chosen to ignore its own published benchmarks for prosecutorial misconduct. Taking into consideration the entirety of this trial, the judge abused his discretion in permitting the assistant prosecutor to go beyond the bounds permitted. Farmer was not given a fair trial.
[1] One also must remember that Farmer was a custodian, not a teacher.
[2] The prosecutor also stated in closing rebuttal that "I highly doubt they snapped the cuffs on him because he works for the City of Cleveland." Again, defense counsel did not raise this issue after his proffer was denied, and did not argue the issue in closing.